DAVID A. BROWN ET AL., DEFENDANTS IN ERROR, v. THE
NEW JERSEY SHORT LINE RAILROAD COMPANY,
PLAINTIFF IN ERROR.

EUPHEMIA BROWN ET AL., DEFENDANTS IN ERROR, v.
THE NEW JERSEY SHORT LINE RAILROAD COMPANY,
PLAINTIFF IN ERROR.

Submitted July 13, 1908—Decided November 16, 1908.

1. Upon the trial of issues embracing the market value of land taken
   under condemnation proceedings for the use of a railroad, it is
   within the discretion of the trial court to admit in evidence
   opinions of witnesses as experts upon such value, if it appears
   from their preliminary examination before the court they have
   acquired some special knowledge of that subject from the sales of
   other land when made under conditions disclosed in the following
   opinion.

2. The exclusion by the trial court of an offer in evidence of a map
   of the geological survey of New Jersey, where such offer is
   limited to the purpose of illustration only, does not constitute
   error; nor was it error for the court acting within the range of
   its legal discretion in such matter to reject offers to prove prices
   paid by the condemning company for other land purchased by it,
   following *Laing* v. *United New Jersey Railroad and Canal Co.*,
   25 *Vroom* 576.

On error to the Middlesex Circuit Court.

Condemnation proceedings taken by the New Jersey Short
Line Railroad Company to acquire rights of way over lands.
On appeal by the landowners to the Middlesex Circuit Court
from the awards of the commissioners, judgments were en-
tered in the Circuit Court upon verdicts in their favor, and
the railroad company brings error.

For the plaintiff in error, *Linton Satterthwait.*

For the defendants in error, *Ephraim Cutter.*

The opinion of the court was delivered by

VREDENBURGH, J.    These two causes, tried below together, and argued by briefs before us, present the same questions for decision and require but one opinion.

The principal errors alleged by the railroad company, the plaintiff in error, relate to the conduct of the trial in the admission of certain opinion-evidence of witnesses, offered by the appealing landowners, to prove the market value of the strip of land sought to be condemned for the uses of the company.    In the exercise of the discretion vested in the trial judge, he allowed certain witnesses to express, before the jury, after preliminary examination of their fitness therein, their expert opinions of the value of this land.    The undoubted rule of law regulating this judicial discretion is that, while it is very broad, it is not unlimited—to adopt the language of the courts of review in the cases cited below—unless this action of the trial court in deciding this preliminary question is "clearly shown to be erroneous in matter of law," or, more precisely speaking, if there is *"any* legal evidence" to support such determination it will not be deemed sufficient ground for reversal.    *State* v. *Arthur,* 41 *Vroom* 425; *Riley* v. *Camden and Trenton Railway Co., Id.* 289; *Steph. Dig. Ev.* 277 (1904); *New Jersey Zinc Co.* v. *Lehigh Zinc Co.,* 30 *Vroom* 189.    In deciding this narrow question it will answer, I think, all present necessities to consider the voluminous testimony of these witnesses in bulk, and not in detail, and only so far as it bears upon their special experience and knowledge acquired through previous sales and purchases of other similar lands in the vicinity of the land in question. Whether such other lands were sufficiently like the land taken, and such sales were sufficiently near in point of time and vicinage to qualify opinion-evidence as to value, was, under the authorities, also very largely within the range of the discretion of the trial court.    These hold that a wide discretion should be given the trial judge in determining whether the conditions are such as readily to admit of reasonable comparison between the land taken and the lands so sold. *Laing*

v. *United New Jersey Railroad and Canal Co.,* 25 *Vroom* 576;
*Shattuck* v. *Stoneham Branch Railroad Co.,* 6 *Allen* 115.

Evidently, in the view of these authorities, the most mate-
rial circumstance forming this qualification of expert wit-
nesses as to land values consists of the fact, either that they
have themselves made sales or purchases of other similar
lands in the neighborhood of the land in question within re-
cent periods, or that they had knowledge of such sales by
others. How recent the occurrence of such sales, in point
of time, and how near in location, and how nearly similar
in comparison must, of course, vary with the circumstances
of each case, and it is therefore impossible to define a gen-
eral rule applicable to all cases. Yet, there are cases which
afford some definite guide as to such time, distance and sim-
ilarity. For instance, in *Benham* v. *Dunbar,* reported in 103
*Mass.* 365, upon a petition, under a statute, for a jury to assess
the value of a lot of land to be taken for public uses on an
island in Boston Harbor, it was held, upon error, by the Massa-
chusetts Supreme Court, that the admission of evidence of the
price of other similar lands sold at different times from *eight*
years to one year before, and distant from a half of mile to
*six miles,* was not erroneous after the introduction of testi-
mony (without objection) tending to show such similarity.
An examination of the evidence in the case at bar shows, be-
yond room for controversy, I think, *some* knowledge on the
part of all these witnesses of sales of lots and portions of
lands similar to and in the immediate neighborhood of the
condemned land. Turning to the evidence in the record here
to ascertain, with more precision, the application of these
general terms to the case in hand, we find that it appeared
that all of these sold lots and parcels of land were located
within a radius of, at most, *two* miles (and nearly all of
them within a much less distance) from the land in question,
and that in point of time the sales testified to had all taken
place within a period of, at most, *three* years from the date
of the giving of the testimony, except that in the instance
given by the real estate agent, Ashley, a period of five or
six years had intervened. It is, therefore, apparent that

*some* special experience in real estate values had been acquired by each of these persons, sufficient, we think, to justify the judicial action below, the weight of the opinion-testimony being left, of course, to the admeasurement of the jury.

The other assigned errors demand but brief comment. The admission in evidence of the answer of the respondent's witness, Kelly, was, if erroneous, rendered harmless by the action of the court in striking the answer from the record, before the close of the trial, upon the motion of the counsel of the plaintiff in error.

The exclusion by the trial court of the offer in evidence by the plaintiff in error of the map of the geological survey of New Jersey is next assigned for error. But that offer was expressly confined by counsel, to use his words, "for the purpose of illustration." It was not introduced to contradict any facts previously put in evidence by the defendants in error, nor to meet nor controvert any issue presented for trial, and its materiality, if any, to the controversy is not manifest. In the brief of counsel it is said that it was admissible to show "town boundaries" and "the relative location of Port Reading, Carteret," &c., but of these statutory boundaries and general topographical conditions the court was bound to take judicial notice without evidence.

The seventeenth and eighteenth assignments of error challenge the court's refusal to permit one of the witnesses, called by the railroad company, to state the prices paid by him, the president of the company, in acquiring certain rights of way for the company in the neighborhood of the land in question. In the case of *Laing* v. *United New Jersey Railroad and Canal Co., supra,* it was held that testimony as to the price paid by the company to other owners for land and damages was inadmissible under the circumstances presented in that case, and it was there stated in the opinion of this court (*p.* 579) that testimony as to the price paid by the company to other owners of land is received only upon the idea that there is "substantial similarity" between the land in question and the other land previously acquired by the company, and that "the practice does not extend, and the rule should not be ap-

plied to cases where the *conditions are so dissimilar* as not easily to admit of reasonable comparison" and that *"much must be left to the discretion of the trial judge* in the determination of the preliminary question whether the *conditions are fairly comparable."*

Upon examining the record before us as to the conditions appearing before the trial court when it excluded this testimony, we find that the prices sought to be put in evidence were paid by the railroad company for these rights of way, as a whole, nothing being made to appear in the testimony showing what part of the total sum paid was applicable to the value of the land taken, nor what portion thereof was assignable to the satisfaction of the damages resulting to the vendor's adjoining land from such taking. There was thus an entire absence of proof as to this important condition. The trial judge could not form, from the prices referred to, any reasonable test or comparison by which the value of the land alone could be compared with, or measured by, the value of the rights of way previously purchased by the company. The discretion of the trial court in excluding the proffered evidence was, we think, properly exercised.

The last contention is that the court erred in refusing to permit the same witness to detail an alleged conversation between him and one of the owners of the land in controversy. The pertinency of such conversation is, in the brief of counsel for the plaintiff in error, attempted to be explained thus: "The testimony of the witness shows that the defendant's right of way across the plaintiff's land was located, where it was located, in consequence of a conversation with the said William M. Brown, one of the plaintiffs, and the inference may well be drawn that the conversation would show some admission as to the damage done by the railroad where the line was run after this conversation with this one of the owners." We need but add that if such was the inferential purpose of the offer, namely, an *admission* of such plaintiff upon the subject of the damages done by the railroad's location to his other lands, the record fails to disclose that such purpose was expressed to the trial court. As the offer appears in the

record, the conversation was immaterial and was properly overruled.

For the reasons given we find no error in the proceedings below and affirm the judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J.  15.

*For reversal*—None.