28 N.J. Super. 575 (1953)
101 A.2d 365
IN THE MATTER OF THE APPLICATION OF THE PORT OF NEW YORK AUTHORITY TO ACQUIRE FOR PUBLIC USE FOR THE CONSTRUCTION OF ADDITIONAL APPROACHES TO THE GEORGE WASHINGTON BRIDGE IN THE BOROUGH OF FORT LEE, COUNTY OF BERGEN, STATE OF NEW JERSEY, CERTAIN LANDS OF JEROME REALTY COMPANY, LIMITED, A LIMITED PARTNERSHIP ASSOCIATION OF NEW JERSEY, ET AL.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1953.
Decided December 15, 1953.
*578 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Russell E. Watson argued the cause for appellant (Messrs. R.E. & A.D. Watson, attorneys).
Mr. James A. Major argued the cause for respondent (Messrs. Breslin & Breslin, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff, Port of New York Authority, functioning pursuant to the statutory terms of chapter 4 of the Laws of New Jersey enacted at the session of 1931 and of the interrelated legislation of chapter 47 of the Laws of New York of the same year, was duly authorized by a resolution adopted by the Board of Commissioners of the Port Authority to institute this action to acquire in fee simple by condemnation certain lands of the defendant Jerome Realty Company, Limited, situate in the Borough of Fort Lee, Bergen County.
The designated public use to which the lands are to be devoted is the construction, operation and maintenance of additional approaches to the George Washington Bridge to connect it with the Palisades Interstate Parkway in the Borough of Fort Lee.
Although the negotiations to purchase the lands had been ineffective, it was upon stated terms stipulated by the parties that the plaintiff take actual possession of the lands on July 11, 1952.
The condemnation proceedings progressed regularly. In accordance with R.S. 20:1-16 an appeal was prosecuted from the award of the commissioners to the Law Division of this court, where the struck jury resolved that the fair value of the lands as of July 11, 1952 and the consequential damages, if any, amount to $48,000. A conformable judgment *579 was entered in the sum of $48,000 together with interest in the amount of $2,400.
The present appeal occasions an appellate review of certain judicial rulings at the trial. The questions addressed to us are tersely stated by counsel for the plaintiff as follows:
"1. Was it error to admit as evidence of market value an executory contract of sale entered into subsequent to the date of taking between a third party and the condemnor in which the stated price was not the sole consideration and which price covered in addition to the value of the lands actually taken, compensation for damages resulting from severance of remaining property and compensation for damages resulting from partial loss of access to an adjoining highway?
2. Was it error to admit as evidence of market value a transaction wherein the grantor either owned or wholly controlled the outstanding stock of the grantee corporation especially when the conveyance was made at the stated price solely to support a mortgage loan?
3. Should the jury award in a condemnation proceeding be set aside as against the weight of the evidence when the only transactions supporting such award are inadmissible?"
Our examination of the record has accordingly been responsive to those specified inquiries.
The third and last-mentioned question projected by the appellant implies the unacceptable postulate that the award of the jury was not supported by any legally admissible evidence. Assuredly the fair value of land sought to be taken by the exercise of the power of eminent domain may be shown by the opinions of qualified expert witnesses. The interrogation of expert witnesses normally constitutes the most practicable medium of supplying the hypotheses by which the jury may be aided in determining value. Of the two acknowledged expert witnesses produced by the owner in the present case, Mr. Troy concluded the fair value of the land as of the designated date to be $63,700, and Mr. Smith estimated its value to be $58,410.
True, the opinions expressed by the experts called by the appellant were conspicuously discordant with those stated by Mr. Troy and Mr. Smith. Mr. Rooney believed the value to be $25,287, and Mr. Schwenn's appraisal was $22,000. *580 As previously noted, the jury determined the fair and just compensation to which the owner was entitled to be $48,000.
Experience has disclosed that both optimism and pessimism may be found to exist in the minds of expert witnesses. The measure of faith and trust to be reposed in the testimony of expert witnesses is preeminently the concern of the jury. Moreover in cases of this class the jury is afforded an opportunity personally to view all of the physical characteristics of the property requisitioned. Hinners v. Edgewater & Fort Lee R.R. Co., 75 N.J.L. 514 (E. & A. 1908); State Highway Com. v. Dover, 109 N.J.L. 303 (E. & A. 1932); In re Housing Authority, Bayonne, 21 N.J. Super. 254 (App. Div. 1952). The record of the case does not inform us that any application for a new trial was made to the trial court upon the contention that the verdict was contrary to the weight of the evidence. R.R. 1:5-3(a); R.R. 2:5.
Appellant's questions Nos. 1 and 2 invite some prefatory comment. Most of the listed corporate stocks, bonds, and also many commodities are marketable daily and the authentic quotations, continuously available, supply a quite definite and accurate specification of their market or trading values. The market value on a designated date of a particular parcel of real estate is not so readily ascertainable.
Shares of the common or of the preferred stock of a corporation and bonds of the same issue are in their respective classes equivalents. Although two pieces of real estate may have substantially similar characteristics, seldom are they identical. So, too, the real estate market is never as brisk as the securities exchanges. To confine the evidence of the value of a specified plot or tract of real estate to proof of its own previous conveyances would in most instances be impracticable. For those recognizable reasons, among others, our courts have been constrained in practice to receive, within certain limitations, information concerning the sales of other properties. Vide, Curley v. Jersey City, 83 N.J.L. 760 (E. & A. 1912).
The primary limitations upon the introduction of such evidence are that the other property shall be substantially *581 similar in its characteristics of value and locality; that the sale thereof was bona fide and such as to exemplify the bargain of a willing seller and a willing buyer, and that the sale occurred within a reasonable time of the value date of the property to be acquired by eminent domain. Laing v. United New Jersey R.R. & C. Co., 54 N.J.L. 576 (E. & A. 1892); Manda v. Orange, 82 N.J.L. 686 (E. & A. 1912).
Such evidence, although not conclusively determinative of the value of the property taken, is serviceable in estimating the weight to be accorded the opinions of the experts, and it furnishes a clue to the just appraisal of the property the value of which is in question.
While the resemblance of two or more properties may be conspicuous, yet it is not ordinarily difficult for counsel of one party or the other to indicate some dissimilarities. The determination of the desirable similarity is not and perhaps ought not be governed in all instances by a rigid and inflexible rule or standard, and consequently the decisional law has bestowed upon the trial judge a "wide discretion" in deciding "whether the conditions are such as readily to admit of reasonable comparison between the land taken and the lands so sold." Brown v. N.J. Short Line R.R. Co., 76 N.J.L. 795 (E. & A. 1908); Ross v. Com'rs. Palisades Interstate Park, 90 N.J.L. 461 (Sup. Ct. 1917); In re Board, &c., West New York, 103 N.J.L. 419 (E. & A. 1927).
It is conceivable that some sales, although of similar properties in the same neighborhood as that of the requisitioned property, do not exhibit a monetary consideration or purchase or exchange price evidential of fair market value. Notable examples are forced sales, intercorporate sales, family sales, and combination sales including both real and personal property for a single price. Again, in such instances the trial judge must exercise his sound discretion in the light of all the circumstances and conditions surrounding the particular transactions.
The courts in most jurisdictions are now in general accord that evidence of sales of similar and comparable properties *582 is competent and relevant to the issue of the fair market value of the property under condemnation. Strangely, for many years the courts of New York excluded the introduction of all such evidence on direct examination because (1) it raised collateral issues, a ground which Justice Holmes described as "a concession to the shortness of life." Reeve v. Dennett, 145 Mass. 23, 11 N.E. 938, 944 (Sup. Ct. 1887). The second reason was that its admission on direct examination would cause surprise. Robinson v. New York Elevated R. Co., 175 N.Y. 219, 222, 67 N.E. 431 (Ct. App. 1903). The former decisions have recently been expressly overruled. Village of Lawrence v. Greenwood, 300 N.Y. 231, 90 N.E.2d 53 (Ct. App. 1949); 36 Cornell L.Q. 137.
Our courts have pursued the more liberal Massachusetts rule which has approved such evidence on direct examination and permitted in such cases a reasonably exhaustive inquiry on cross-examination of the expert's experience, his familiarity with the sales, the sources of his information, the points of similarity as well as the points of difference between the properties, their proximity and adaptable uses and the intrinsicalities of the sales. Jones on Evidence, Civil Cases (3d ed.), § 389.
We have indulged in expressing these comments to disclose that the trial de novo in eminent domain cases is essentially an informational inquisition basic to the determination and award of just compensation to the condemnee for the property taken. The inquiry customarily implicates usefully the consideration of comparisons, contrasts, and parallelisms, and it therefore should not be enclosed within boundaries too technically contracted.
In question No. 1 counsel for the appellant asks us whether it was not error for the trial judge to have admitted in evidence the written executory agreement of sale dated April 29, 1953 between the vendors, the executors of Adelaide Castellano, deceased, and the plaintiff as vendee. Oddly, this instrument, the admission of which is now impugned, was in fact tucked in the evidence by counsel for the plaintiff-appellant. Let us see how it happened.
*583 Counsel for the condemnee during the course of his cross-examination requested one of the condemnor's expert witnesses to assume that such a contract, reciting the terms and provisions, had been made between the parties on the stated date and asked him if that transaction "would influence your valuation on our subject property." An objection to the hypothetical question was overruled. The answer was, "It would not." Presumably the answer would have concluded further reference to the contract but during the redirect examination of the witness, counsel for condemnor stated, "We desire to offer in evidence a contract which was referred to in cross examination of Mr. Schwenn yesterday by Mr. Breslin, over our objection * * *." Had the contract been offered in evidence on behalf of the condemnee, its admission might have been denied. Brown v. New Jersey Short Line R.R. Co., supra. Learned counsel for the condemnor obviously speculated. The material terms of the agreement and its distinguishable irrelevancy to the issue were doubtless discussed by counsel for the condemnor, as intended, in his summation, thus eradicating or neutralizing the evidential significance of the reference to the contract by counsel for the condemnee. In such circumstances we are not persuaded that substantial error was committed in the particular specified by the appellant.
It is the general rule that evidence of mere offers or options to sell or purchase similar real properties is not admissible. Essex County Park Comm. v. Brokaw, 107 N.J.L. 110 (E. & A. 1930); cf. Montclair R.R. Co. v. Benson, 36 N.J.L. 557 (E. & A. 1873). The reasons under setting the rule are expressed in Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); Erceg v. Fairbanks Exploration Co., 95 F.2d 850 (9 Cir., 1938). Offers to sell made by an owner of the lands to be taken and proximate in point of time might, perhaps, in some circumstances constitute admissions against interest.
We pass on to devote our attention to question No. 2 propounded by counsel for the Port Authority in this appeal. Again let us visualize the hinterground of that appellate *584 criticism. In our examination of the transcript of the testimony we observe that it was counsel for the appellant who initially ushered into consideration the conveyance on July 27, 1950 of the Allison Land Company to Ercole Tamburelli on the direct interrogation of his expert witness Rooney. The purchase price was $6,981.46. Assuredly this originated the privilege of counsel for the condemnee to cross-examine the witness upon the influence his knowledge of that conveyance had upon his opinion of the value of the subject property and the possible causes for a modification of its influential tendency.
In so doing counsel for the condemnee exhibited to the witness a certified copy of a subsequent deed on April 10, 1951, of conveyance of the property by Tamburelli to Hudson Apartments at a considerably higher price and requested the witness to verify the therein stated purchase price of $30,000. This deed had been offered and admitted in evidence by counsel for the condemnor. At that point the interrogation of the witness was interrupted by an objection interposed by counsel for the condemnor, who asserted the cause of his objection to be that Hudson Apartments was a corporation of which Tamburelli owned 80% of the capital stock, his daughter owned 10%, and his son-in-law 10%. The trial judge overruled the objection to the question and assured objecting counsel of the opportunity to disclose the asserted family interest inherent in the transfer. Counsel for the condemnor availed himself of the opportunity, called the grantor, Tamburelli, as a witness, exposed by his testimony the verity of the assertion concerning the identity and relationship of the stockholders of the grantee, and tendered in evidence a certified copy of a mortgage delivered on April 27, 1951 by the Hudson Apartments to the Trust Company of New Jersey for a loan of $357,000 granted under the National Housing Act.
The following colloquy ensued:
"The Court: I think we understand the situation. I don't see why you have to, unless you want to  I don't see why you have to burden it any further with the mortgage.
*585 Mr. Watson: Very well. If your Honor prefers that we should not offer that mortgage, I will withdraw it.
The Court: Well, you have before the jury now that this sale, to which Mr. Breslin made mention, was one to a corporation in which he owns 8 shares, and his daughter owns 1, and his son-in-law owns the other.
Mr. Watson: Very well. I will stand there. I withdraw the offer."
If, then, we recognize the inquisitorial nature and purpose of a condemnation proceeding which contemplates the exploration of recent sales of similar properties, we must foresee the propriety of permitting within the bounds of reasonable discretion a liberal ventilation on the direct, re-direct, and cross-examination of the witnesses of the material and significant intrinsicalities of those transactions. In the present case the inherent and distinctive characteristics of both the Castellano contract of sale and the Tamburelli conveyance to Hudson Apartments were fully exposed for the information of the jury. After our reading of the explanatory and instructive charge of the court, it is not perceptible to us how the jurors could have been thereby rationally misguided or deceived.
This appeal is essentially an exemplification of one wherein counsel for the appellant complains of alleged errors which he himself nurtured.
In conclusion, we are not persuaded that the admission of the evidence to which the appellant refers surpassed, in the circumstances in which it occurred at the trial, the confine of sound and reasonable judicial discretion especially to a degree so prejudicially harmful to the substantial rights of the appellant as to warrant a reversal of the judgment. The judgment is therefore affirmed.