41 N.J. Super. 385 (1956)
125 A.2d 305
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF-APPELLANT,
v.
JACOB RUE, JR., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued July 9, 1956.
Decided September 4, 1956.
*386 Before Judges FRANCIS, KNIGHT and HUGHES.
Mr. Walter Goldberg argued the cause for the appellant (Mr. Walter L. Smith, Jr., on the brief).
Mr. Sam Weiss argued the cause for the respondents (Mr. Alston Beekman, Jr., attorney; Mr. Ralph S. Heuser, of counsel).
The opinion of the court was delivered by HUGHES, J.S.C. (temporarily assigned).
This is a condemnation case wherein the New Jersey Highway Authority appeals from a judgment of the Law Division awarding *387 damages to the defendants-respondents for the partial taking of their land, devoted primarily to the operation of a dairy farm business. This dairy farm consisted of about 204 acres, of which approximately 47 acres of land had been taken for construction of the Garden State Parkway. Condemnation proceedings having been initiated, the case was tried before commissioners, an award was made and the owners appealed. A verdict of $70,000 damages was rendered by a jury impanelled in the Law Division.
At the jury trial sharp dispute eventuated as to several evidence questions having important relationship to the issue before the jury, and hence comprising the gravamen of the points advanced to us on this appeal. The important bearing upon the outcome of most of this disputed evidence is indicated by the nature of variance in the terminal opinions of the real estate experts, called in the standard pattern to support the respective contentions of the litigants. Two such experts for the owners testified that the damage resulting from the taking amounted to $74,000 and $77,000, respectively, whereas the two experts for the condemner each estimated such damage at about $40,000. This counterbalance of expert opinions casts into yet sharper focus the implications of the evidence rulings which are under attack.
At the trial the owner witness was permitted, over the condemner's objections, to testify as to income and profits from his dairy business for the two years just before the taking, and the income and loss for the year following. The vigor of the condemner's resistance to this testimony was based upon the established rule that business profits are not the subject of independent compensation aside and apart from the market value of the land seized (upon which the business has been operated). The condemner does not acquire the going-concern value of the business and the owner's proof of loss thereof hinges upon speculative elements, such as its profitable transferability to a new location, and the like. Distinction of this rule from situations where the condemner appropriates the temporary use of land housing a going-concern business, or seizes it (as a public utility, *388 for instance) for continued operation by a governmental authority (thus realizing not only the land, but the going-concern value), has been noted. Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1948). And our Supreme Court has commented (City of Trenton v. Lenzner, 16 N.J. 465 (1954)) upon the sometimes harsh operation of the general rule, noting "* * * the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due to the owner * * *," citing Kimball Laundry Co. v. United States, supra; Housing Authority of City of Bridgeport v. Lustig, 139 Conn. 73, 90 A.2d 169 (Sup. Ct. Err. 1952); 18 U. of Chi. L. Rev. 349 (1951); 35 Va. L. Rev. 1059 (1949). However, it is unnecessary here to embrace the extreme of either view, for we coincide with the theory under which the learned trial court accepted this testimony, namely, that while loss of business profits was not an element of recoverable damage, proof thereof was nevertheless admissible as bearing upon the question of the highest and best intrinsic use of this particular farm land, the inadaptability of the remaining land to the continuance of such use, and other factors bearing upon the jury's decision as between the variant appraisals of the experts.
The owner called another witness, Mr. Wardell, a dairy farmer in a nearby municipality, two items of whose testimony are suggested as ground for reversal. First, he was permitted to show the sum paid him by the Authority for part of his dairy farm, on the theory of comparability of sale, and hence of relevance to the market value of the instant property. The Authority contended that there was no true comparability because such acquisition presumably had involved severance damages, the nature of which had not been shown in evidence. The court, on the basis that the acquisition of the Wardell land was by agreement and not through formal condemnation proceedings (which would normally have embraced such severance damage) admitted this evidence, and we think rightly so. If the Wardell sale *389 had included an element of severance damage and was, therefore, something other than a "comparable" sale of probative relevance to market value of the property in question before the court, that might have been, but was not, shown in preliminary or general cross-examination of this witness, or otherwise, and thus made subject to a motion of exclusion. Under the circumstances presented by the present record, however, we see no error here.
But we think the admission of other testimony of this witness was error, and of substance. Although not an expert witness in real estate values (even in the limited field of sales of dairy farms), and no effort having been made to qualify him as such, he was nevertheless permitted to testify to his opinion that the instant farm before condemnation was of the reasonable value, on the open market, of $140,000 to $150,000. He added to this his opinion that after the partial taking he "wouldn't put any value on it as a dairy farm." This was powerful testimony and quite conceivably might have led the jury to its choice between the diametrically opposed opinions of the qualified real estate experts. It was admitted in reliance upon the case of Pennsylvania, P. & B.R. Co. v. Root, 53 N.J.L. 253 (Sup. Ct. 1891). In that case, however, the farmer witness was "* * * acquainted with the value of farm land in the neighborhood of the property condemned * * *." The witness Wardell did not evince such knowledge. Although under the theory of the Root case, supra, his special knowledge as a dairy farmer might well have justified the acceptance of his opinion that a partial taking here would render the property useless as a dairy farm, there is not a vestige of probative support for his opinion that the primary value of the farm was the figure mentioned by him. In the Root case, supra, Chief Justice Beasley had this to say of expert witnesses:
"The witness is an expert on certain subjects, and his opinions have no place in the judicial investigation except by reason of such status. Within the sphere of his special knowledge, he is competent to express his opinion; beyond that reach, he is not competent. Such *390 is, beyond question, the general rule; none but experts on the given subject can, in any course of law, express their estimate of the value of anything, real or personal. Such it is believed is the universal practice of all courts that are controlled by the methods of the common law."
This evidence being almost certainly an important factor in the jury's resolution of the issue, was of substance which requires reversal.
As a new trial must be had, we need not discuss the weight of the evidence in any further particular, but should note our opinion that certain testimony of the witness Compton should not have been rejected. This real estate expert sought to testify to comparable sales in the vicinity, on the basis of hearsay information as to such sales received from other brokers professing knowledge thereof. This type of evidence is permitted under N.J.S. 2A:83-1, inter alia, upon the basis of "* * * information obtained from the broker or brokers who negotiated or who are familiar with or cognizant of such sales * * *." The learned trial court thought there should have been strict proof of the fact that the broker who informed the witness was "familiar with or cognizant of" such sales. While we agree that this statute represents a radical change from the concepts which we, as lawyers, have had as to the worth of hearsay evidence, it is apparent that the Legislature intended this very latitude to "* * * abolish the hearsay rule in cases within the purview of the statute * * * and to permit hearsay evidence of other sales of similar properties to be received as competent for what it is worth." White v. State Board of Tax Appeals, 123 N.J.L. 350 (Sup. Ct. 1939). The weight and value of such evidence may be caused to shrink by cross-examination, and unjust surprise may be avoided by the ample protection of pretrial discovery. Hence we believe that this evidence should have been admitted, despite its infirmities, for what it was worth.
For the reasons above set forth, the verdict under appeal is set aside and a new trial of the issue is ordered.