46 N.J. Super. 125 (1957)
134 A.2d 113
STATE OF NEW JERSEY, BY STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT,
v.
HUDSON CIRCLE SERVICE CENTER, INC., A CORPORATION OF NEW JERSEY, ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 15, 1957.
Decided July 31, 1957.
*126 Before Judges HUGHES, PRICE and COOLAHAN.
*127 Mr. Robert W. Moncrief argued the cause for the defendants-appellants.
Mr. Christian Bollermann, Deputy Attorney-General, argued the cause for the plaintiff-respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey, attorney).
The opinion of the court was delivered by PRICE, J.S.C. (temporarily assigned).
By this appeal defendant-appellant, Hudson Circle Service Center, Inc., a corporation of New Jersey, owner of the property which was acquired by plaintiff by eminent domain by virtue of N.J.S.A. 27:1-1 et seq., seeks to set aside a judgment in the Superior Court, Law Division, entered on the verdict of a jury on a trial de novo on appeal from the award of condemnation commissioners. The subject matter of the litigation had its origin in a complaint filed by plaintiff seeking the appointment of commissioners to determine the compensation to be paid for the taking of the land and premises in question, including the damage, if any, to remaining property of defendant as the result of the taking. The property is located in the Town of Kearny, Hudson County, New Jersey. The award of the commissioners was $223,500. Both plaintiff and defendant appealed from the commissioners' award. A trial de novo was held and judgment entered on the verdict of the jury in the Superior Court in the sum of $168,200. This is the judgment which defendant seeks to set aside by reason of alleged errors of the trial judge in refusing to admit certain proffered testimony.
The land acquired involved two parcels, one of 1.279 acres and the other of 0.701 acres, respectively, out of a total area of approximately 20 acres owned by defendant.
Part of the premises acquired was leased to Jersey Truck Center, a partnership owned by brothers of one Myron G. Auerbach, an officer and stockholder of Hudson Circle Service Center, Inc., aforesaid. The lease was for 21 years from April 30, 1948, at a rental of $7,200 per annum, payable in equal monthly installments of $600. The lease *128 provided that the leased premises were "to be used and occupied for a gasoline and service station * * *." Paragraph 26 of the lease was as follows:
"Paragraph 26. It is understood and agreed between the parties hereto that the agreement executed by them dated April 30, 1948 regarding the purchase of gasoline for the said premises herein leased shall be made a part and parcel of this lease and shall be subject to all the terms, conditions and covenants hereunder."
As set forth in the appendix the attachment reads as follows:
"The parties hereto specifically agree that the rent and other charges reserved herein to be paid by the Tenant to the Landlord is essentially a consideration of and is predicated upon the due full, complete and faithful compliance by the Tenant of all the terms of the following clause:
In consideration of the execution of the within lease and in order to induce the Landlord to sublet the demised premises to the Tenant herein at the rent reserved herein to be paid by the Tenant, the Tenant does hereby covenant and agree that for and during the entire term of the 21 years from the date hereof, the said Tenant will not, nor permit anyone else to store, handle, sell, off for sale, advertise for sale, use or permit to be used upon the demised premises, any part thereof or adjacent thereto, any gasoline, oil, petroleum products, automotive equipment, accessories, electrical equipment or any other merchandise of whatsoever nature, kind or description other than that supplied by Hudson Circle Service Center, Inc., of No. 51 Lexington Avenue, New York City.
It is further understood and agreed that the said Tenant shall purchase and acquire from the said Hudson Circle Service Center, Inc., all his requirements of gasoline, oil, petroleum products, automotive equipment, accessories, electrical equipment or any other merchandise of whatever kind, nature or description which is to be used, stored, handled, sold, offered for sale, advertised for sale upon the demised premises, or any part thereof, or adjacent thereto and that the said Tenant hereby agrees to pay unto the said Hudson Circle Service Center, Inc., for such gasoline (upon delivery) the `posted tank wagon price' of the major owner or supplier of the brand of gasoline delivered as aforesaid at the time of such delivery, and for oil, petroleum products, automotive equipment, accessories, electrical equipment or any other merchandise of whatsoever kind, nature or description so purchased at the same price for which the major owner or supplier of that branded article sells the same products to similar service stations in the immediate vicinity of the within property. The said Tenant shall at no time, post or display or advertise at, in or about the said demised premises any other selling price of gasoline other than that fixed by the *129 said Hudson Circle Service Center, Inc., it being understood that the said Tenant will accept such brand of gasoline as the said Hudson Circle Service Center, Inc., shall designate, which brand said Hudson Circle Service Center, Inc., may change from time to time.
When the word `Tenant' is used in the above clause it shall mean and is understood by all parties to mean the Tenant, his heirs, servants, legal representatives, assigns, sub-tenants, under-tenants, or those claiming under or by virtue of them.
When the name `Hudson Circle Service Center, Inc.,' is used in the above clause, it shall mean and is understood by all parties hereto to mean his assignees, legal representatives, or any person, firm or corporation designated by it."

* * * * * * * *
"Upon the breach of any of the terms or part or portion of the terms set forth in the within clause or if for any reason whatsoever the Tenant fails to comply or is prevented from complying with all the terms, covenants and conditions of this clause on its part to be performed, then and in that event, in addition to all legal or equitable remedies or other relief that the Landlord may be entitled to, the Tenant agrees to pay unto the Landlord, in addition * * * a sum equal to two (2¢) cents per gallon on each and every gallon of gasoline delivered to the demised premises during each and every month of the term of twenty-one years from date, two (2¢) cents per gallon to be paid monthly together with the other item of rent set forth with the same force and effect hereinafter as if originally by the terms of the lease agreement, the rent reserved therein to be paid by the Tenant to the Landlord consisted of (a) $600 per month, (b) Premiums from liability and plate glass insurance, (c) two cents (2¢) per gallon on each and every gallon of gasoline delivered to the demised premises, payable monthly."
One Riley H. Marshall, a witness on behalf of defendant, testified that he had been with The Texas Company for 24 years; that it dealt in petroleum products; that its gasoline had the brand name of "Texaco"; that he presently was district manager for the company in Linden, New Jersey, and had supervisory authority with reference to the leasing of gas stations for the company and that recommendations as to rents to be paid by the company stemmed from his office; that his department, in determining the suggested rent his company would pay for a station, first arrived at an estimated gallonage of the site and, to translate that into a definite rental, a factor was applied which he referred to as "more or less a rule of thumb formula"; that the objective *130 was to secure as low a rent as possible but, he said, "we usually go up to two cents a gallon." This testimony was the subject of objection. It and other proffered testimony to which reference is hereinafter made was presented on the theory that the amount of money paid as rent on the basis of gallonage does not come under the suggested ban of testimony referable to business profits; that it is evidential of the rental value of the premises.
Objection to the offered testimony was advanced by the State on two grounds: (1) that a specific annual rental of $7,200 was designated in the lease and an additional rental of 2¢ for each gallon of gasoline delivered to the demised premises became payable only in the event of default in the terms of the aforesaid agreement incorporated in the lease; and (2) that a computation based on the number of gallons of motor fuel oil sold would constitute evidence bearing on a claimed business loss, not to be the subject of computation in condemnation proceedings.
The court apparently barred the testimony on the first ground above set forth.
Defendant offered to prove that it was the fixed policy of The Texas Company to negotiate leases on the basis of 2¢ per gallon of motor fuel oil delivered and that during a recent year The Texas Company delivered 2,033,891 gallons to the Jersey Truck Center. Further offer was made to prove market value of the land on the basis of the capitalization of rent that would be paid on the amount of the gallonage sold on the property. Both offers were overruled by the court.
Another offer was made to prove by the testimony of a witness in charge of real estate for the Gulf Oil Company that it was the established practice of that company to rent gasoline stations from owners on the basis of at least 2¢ for each gallon of gasoline sold. This offer was overruled by the court.
A final offer was made to present testimony of another expert who had arrived at an opinion of the value of the land based upon the capitalization of the rent that would be paid *131 on the basis of the gallonage sold on the property. This, too, was overruled.
These adverse rulings are challenged and form the subject matter of the appeal.
In the case of New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309 (App. Div. 1956), Judge Jayne in the opinion delivered for the court said that "accurately to ascertain and determine the market value of the unexpired term of a leasehold interest in real property taken by eminent domain is not ordinarily a simple task." That case involved a dispute between two tenants and a landlord of property taken in condemnation. The entire award had been deposited by the Authority with the clerk of this court in conformity with N.J.S.A. 27:12B-7. This fund was claimed in part by the tenants and wholly by the landlord. The latter prevailed.
The basic law applicable to the nature of an award in condemnation in cases where leaseholds exist was expressed in that opinion. On the authority of the above case and the decisions to which reference is therein made it was essential that the award of just compensation to be determined in the case at bar be inclusive of all of the separate interests in the property. To properly determine that amount evidence was admissible to support the contention of the appellant that the portion of the property leased to Jersey Truck Center had a rental value in excess of the rent reserved by the lease. Here the jury's consideration of the award of just compensation was circumscribed by the fixed rental in the lease and, if the leased premises had a rental value in excess of the rent set forth in the lease, the jury by the court's ruling was deprived of the opportunity to consider evidence referable thereto. The opportunity should have been accorded to the landlord to present evidence asserted to demonstrate that the rent reserved in the lease represented less than fair market rental value. Proof of value by way of capitalization of rent should not be limited to such capitalization of actual rents received if evidence is available to support the owner's contention that a higher rental value *132 than the rent reserved exists and that the jury should be permitted to consider evidence relating to such greater amount and its capitalization. Jahr, Law of Eminent Domain (1953), sec. 147; City of Newark v. Cook, 99 N.J. Eq. 527 (Ch. 1926), affirmed 100 N.J. Eq. 581 (E. & A. 1927).
This was not an attempt to prove business profits, although it has that collateral effect. Cf. City of Trenton v. Lenzner, 16 N.J. 465 (1954), and New Jersey Highway Authority v. Rue, 41 N.J. Super. 385 (App. Div. 1956). The proffered evidence had as its objective the determination of what rental income would probably accrue to a purchaser in the open market.
It is to be noted that the lease in question incorporated within its terms the contract referable to the gallonage and the 2¢ per gallon additional rental payment. True, it was to become operative only in case of the breach of the lease terms but it was an important element of the terms relating to rental as bearing on the value of the entire property. The trial court so stated in admitting the agreement, incorporated as part of the lease by the terms of the latter instrument, after initial objection by the State.
The State in the case at bar stresses its support of the trial court's rulings in part by the fact that a trial court in a case of this type has wide discretion in the admission or rejection of evidence, citing In re Port of New York Authority, 28 N.J. Super. 575 (App. Div. 1953); New Jersey Highway Authority v. Rudd, 36 N.J. Super. 1 (App. Div. 1955). This is true, but the testimony here proffered we feel was evidential and should have been admitted. Its probative force is challenged by the State which asserts that on the theory that a tenant is entitled to recover the difference, if any, between the fair value of his leasehold and the actual rent reserved, the value of the lease computed by the gallonage method would greatly exceed the value of the property taken as estimated by one of defendant's witnesses. This argument goes to the value of the testimony and the weight to be accorded to it by the jury. It is not *133 determinative of the basic issue, namely, whether the jury should have had an opportunity to consider the evidence.
In the case of City of Trenton v. Lenzner, supra, Mr. Justice Jacobs, after noting that the measure of compensation in condemnation cases is fair market value, said (16 N.J. at page 476) that "value" has many meanings, but "that most things have a general demand which give them a value transferable from one owner to another. Ordinarily this transferable value may be measured by the price which, in all probability, would voluntarily be agreed upon in fair negotiations between an owner willing (but not forced) to sell and a buyer willing (but not forced) to buy; and it is this price which is generally said to determine the fair amount of compensation to be paid to the owner."
The court in the Lenzner case noted initially the rule followed in this State that "even though the taking of the land actually results in the loss of the owner's business located thereon, he is not entitled to any independent compensation for the value of the business." The court then noted "the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due to the owner." The opinion makes reference to the case of Housing Authority of City of Bridgeport v. Lustig, 139 Conn. 73, 90 A.2d 169 (Sup. Ct. Err. 1952), which involved a condemnation report which fixed the value of the owner's poultry market building at $6,500 and then stated that if the owner should be compensated for the building with an established poultry business therein, the fair market value of the building was $16,500. The court, in sustaining an award of $16,500, held that the owner was entitled to the fair market value of his real property, and that "in determining such value it was proper to consider all of the elements which an owner or a prospective purchaser could reasonably urge as affecting its fair price."
The court in the Lenzner case held that the fair market value "would be fixed after the due weighing of all the factors which customarily enter into their purchase and sale *134 negotiations. A foremost factor in such sale of the parking lot would be its prospective earning power evidenced in considerable part by past earnings."
In the case at bar a jury has the right and duty to "weigh all the factors." We believe this should include the consideration of the proffered evidence of the amount of gallonage delivered and the claimed difference between the rent reserved and the claimed greater value of the lease. In that connection the jury should have had the opportunity to consider evidence involving the capitalization of the rental for which conditional provision was made under the lease, and also involving capitalization of rental which it is claimed would result from the higher rental that such stations on a gallonage basis would command in the open market.
Under these circumstances we determine that the rigid confinement of the proofs by the learned trial court to the rental fixed by the lease was erroneous and, as it went to the heart of the question of valuation, it was substantial.
As stated in the case of New Jersey Highway Authority v. Rudd, supra, 36 N.J. Super. at page 5:
"In the consideration of appeals our study of the record is dedicated to the ascertainment whether to deny a reversal of the judgment under review for the trial error would apparently be inconsistent with substantial justice and prejudicial to the substantial rights of the appellant. R.R. 1:5-3; 2:5."
For the reasons above set forth, the judgment under appeal is set aside and a new trial of the issue is ordered.