65 N.J. Super. 518 (1961)
168 A.2d 233
STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF-APPELLANT,
v.
CARLTON WILLIAMS, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1961.
Decided February 27, 1961.
*521 Before Judges GOLDMANN, FOLEY and FULOP.
Mr. David J. Goldberg argued the cause for plaintiff-appellant (Mr. David D. Furman, Attorney General of New Jersey, attorney).
Mr. Martin F. Caulfield argued the cause for defendants-respondents (Messrs. Hannold and Hannold, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
This is a condemnation case. The State appeals from a judgment of $60,000 in favor of the landowner, Carlton Williams, entered in the Law Division on a jury verdict.
The land in question, part of a tract of 1.15 acres, is located in the Borough of Westville, Gloucester County. The entire tract has a frontage along State Highway Route 47 (Delsea Drive) and also a frontage on Hillside Avenue. The improvements on the property consist of a main building used for a gasoline service station, including garage, fuel oil station, a marine sales and showroom, and a marine equipment and repair shop; also two fuel oil storage tanks, a loading platform and a storage building. A five-room apartment is located on the second story of the main building.
The State has constructed a traffic interchange which required the taking of a frontage on Delsea Drive. The area taken is approximately one-sixth of an acre and the improvements thereon consisted of two gasoline pump islands, a telephone booth and a sign. The State, through its witnesses, conceded that, after the taking, the remaining improvements, above noted, were not suitable for use as a gasoline service station. It is also admitted by the State that the taking eliminated Delsea Drive as a means of access to the property.
To prove the value of the condemned property Williams called as expert witnesses, Harold I. Dierolf, a managing executive of a fuel oil company, and Merrill B. Boals, a real estate appraiser.
*522 The trial court, over the objection of the State, (1) found Dierolf to be qualified to give expert testimony, (2) permitted him to testify to the value of the entire property used for gasoline station purposes prior to the taking, and (3) received in evidence Boals' evaluation of the land and buildings remaining after the taking, based in part on the sales price of another property, which the State contended was not a comparable sale. These alleged trial errors furnish the grounds of appeal.

I.
Concededly, Dierolf was not an expert in the field of real estate appraisal. But he testified that for 17 years prior to his present occupation he had been employed by the Socony Vacuum Oil Company, and that for a five-year period, ending about 2 1/2 years before the trial, he was employed by Socony Vacuum as a "District Marketing Office Manager" of a territory covering the South Jersey area and running north to Trenton and over to Long Branch. In this capacity his work included placing valuations upon properties suitable for use as gasoline service stations, for purposes of purchase and sale by the company. During this service he had appraised 36 such properties. While he was thoroughly familiar with the various factors willing buyers and sellers would consider in evaluating properties for gasoline service station use in the area, his expertise was limited to appraising the land and improvements as a unit for such use. He did not qualify as an expert on the value of the unit as a going gasoline station business.
The State contends that this knowledge and training were insufficient to qualify Dierolf because it did not fit him to evaluate the property in accordance with what the State conceives to be the applicable legal standards. Citing Brown v. New Jersey Short Line R. Co., 76 N.J.L. 795, 797 (E. & A. 1908), the State argues that, as said therein, the qualifying of experts on real estate values requires proof *523 either that they have themselves made sales or purchases of other similar lands in the neighborhood of the land in question within recent periods, or that they have knowledge of such sales by others. This statement of the law must be viewed in the context of the facts from which it evolved. The Brown case presented what the court itself termed the "narrow question" of whether the "special experience and knowledge" of the experts who gave opinions as to value on the basis of their knowledge of the consideration paid for similar lands had been "acquired through previous sales and purchases of other similar lands in the vicinity of the land in question." 76 N.J.L., at p. 796. Obviously, the holding in Brown operates only in apposite factual situations. Otherwise persons solely qualified to appraise real estate, such as tax assessors and others, who had not bought or sold real estate previously, or had no knowledge of comparable sales, could never qualify as experts. While such previous experience and knowledge may qualify a witness, the lack of it does not necessarily disqualify him.
The State also relies on our holding in New Jersey Highway Authority v. Rue, 41 N.J. Super. 385, 390 (App. Div. 1956), certification denied 22 N.J. 340 (1956), that a dairy farmer from a municipality nearby the dairy farm sought to be condemned was not qualified to testify that in his opinion that farm had a market value of $140,000-$150,000. The Rue case is distinguishable. The purported expert was just another dairy farmer from a neighboring town. He was not an expert in real estate values (even in the limited field of sales of dairy farms), and no effort was made to qualify him as such.
The qualifications of experts are left to the discretion of the trial court and its decision is conclusive unless clearly shown to be erroneous as a matter of law. Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950). The accepted basis for the qualification of an expert is that he have peculiar knowledge or experience, not common to the world, which renders his opinion founded on such knowledge or *524 experience of some aid to the court or jury in determining the questions at issue. Ibid. Under the terms of our Constitution and statutes, an owner whose property is being taken for public use must receive just compensation. N.J. Const. 1947, Art. I, par. 20; N.J.S.A. 20:1-9. The measure of compensation is the fair market value. City of Trenton v. Lenzner, 16 N.J. 465, 476 (1954), certiorari denied 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1954). Clearly, it was within the discretion of the trial judge to conclude that the particular expertise of Dierolf, though perhaps insufficient to qualify him as an expert in real estate values generally, could be considered to be of aid to the jury in its determination of the fair market value of defendant's gasoline service property before the taking.

II.
It is well established that where the taking is partial, the measure of damages is the difference in the value of the tract before and after the taking, or the value of the land that is taken and compensation for the diminution in value that will result from the taking. Sterner v. Nixon, 116 N.J.L. 418, 420 (E. & A. 1936); In re Parking Authority of City of Hackensack, 30 N.J. Super. 534, 541 (App. Div. 1954).
Dierolf testified that before the taking the market value of all land and buildings used for gasoline station purposes was $70,000. He said also that after the taking the property could no longer be used for such purposes. The State argues that this testimony was erroneously admitted since the $70,000 valuation of the gasoline station included as an element the value of the "going gas station business."
It is settled that the business profits derived from a "going business" conducted on property taken by condemnation are not the subject of independent compensation aside, and apart, from the market value of the land seized. City of Trenton v. Lenzner, supra; New Jersey Highway Authority v. Rue, supra, 41 N.J. Super., at p. 387. The condemnor *525 does not acquire the going concern value of the business, and the owner's proof of loss thereof hinges upon speculative elements, such as its profitable transferability to a new location, and the like. Ibid. Exceptions exist where the condemnor appropriates the temporary use of a going business or seizes it, as a public utility, for continued operation by a governmental authority, see City of Trenton v. Lenzner, supra, 16 N.J., at p. 477; Kimball Laundry Co. v. United States, 338 U.S. 1, 5, 69 S.Ct. 1434, 93 L.Ed. 1765 (1948); Banner Milling Co. v. State of New York, 240 N.Y. 533, 148 N.E. 668, 41 A.L.R. 1019 (Ct. App. 1925), certiorari denied 269 U.S. 582, 46 S.Ct. 107, 70 L.Ed. 423 (1925).
Our Supreme Court has commented upon the sometimes harsh operation of the general rule and has noted:
"* * * the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due to the owner * * *." City of Trenton v. Lenzner, supra, 16 N.J., at p. 477.
In Housing Authority of City of Bridgeport v. Lustig, 139 Conn. 73, 90 A.2d 169 (Sup. Ct. Err. 1952), the court dealt with a condemnation report which fixed the value of the owner's poultry market building at $6,500 and further stated that if the owner should be compensated for the building with an established poultry business therein, the fair market value of the building was $16,500. The court sustained the award of $16,500 and held that the owner was entitled to the fair market value of his real property, which value should consider all of the elements which an owner or prospective purchaser could reasonably urge as affecting its fair price. The following portion of the opinion in the Lustig case was quoted with approval by the Supreme Court in the Lenzner case:
"* * * The better reasoned cases hold that, although the value of a business which is being conducted upon the real property *526 condemned may not ordinarily be added to the market value of the realty as damages for the taking, the fact that a given business is in operation on the property should be taken into consideration in determining the market value of the real property if in truth it is a factor in establishing that market value  if, that is, the use of the real property for that purpose enhances the value of it. * * * In particular, it is proper to take into consideration the existence of a going business on the land in question as indicative of the highest economic use to which the land may be put. * * *" 16 N.J., at p. 478.
The Supreme Court then returned to a consideration of the property condemned in the Lenzner case, noting that it had been operated profitably for many years as a parking lot, and further stated:
"* * * Its fair market value, measured by the price which would voluntarily be agreed upon between the hypothetical owner willing to sell and the hypothetical buyer willing to buy, would be fixed after the due weighing of all the factors which customarily enter into their purchase and sale negotiations. A foremost factor in such sale of the parking lot would be its prospective earning power evidenced in considerable part by past earnings. Such sale of the parking lot would actually result in a transfer of the whole commercial enterprise involved  and, as a practical matter, the same result would flow from a forced transfer of the land to the city for public parking purposes. In the light of the foregoing there appears to be nothing in the judicial precedents which would preclude the commissioners from making an award which would truly constitute just and equitable compensation for the taking of the appellants' parking lot. * * *" 16 N.J., at pp. 478-479.
Although the above passage is technically a dictum, since no award had yet been made, the case arising on motion for summary judgment, the language used was meant for the future guidance of the condemnation commissioners in making their award and thus assumes great importance.
In New Jersey Highway Authority v. Rue, supra, we recognized the principle stated in Lenzner by permitting testimony as to the loss of business profits due to a condemnation, for the purpose of showing the highest and best intrinsic use of the land, and inadaptability of the remaining land to the continuance of such use, and other factors *527 bearing upon the jury's decisions as between the variant appraisals of the experts. The rationale of the Lenzner case was also followed in State by State Highway Com'r v. Hudson Circle Service Center, Inc., 46 N.J. Super. 125 (App. Div. 1957), where we held that testimony offered as to the value of a gasoline service station computed by capitalization of rent which would be paid on designated gallonage was erroneously excluded. Referring to the passage in Lenzner that market value should be fixed by considering all the factors which a willing buyer and seller would consider, we stated that "a jury has the right and duty to `weigh all the factors.'" The same is true of the present case. In giving his opinion as to the market value of the property used for gasoline purposes, Dierolf had a right to consider all the factors involved, and the jury had a right and a duty to weigh all these factors.
It is clear from the record that Dierolf testified within the rationale of Lenzner. He did not value the gasoline station as a going concern. He did consider such factors as gallonage sold. This was not improper. He did not consider the good-will of the enterprise. All of the factors which Dierolf testified to as those upon which he grounded his opinion as to market value were factors which a willing buyer or seller of the property  not the enterprise  might legitimately consider. There was no error in admitting this testimony.

III.
The final point made by the State is that the trial court erred in permitting Boals to testify to the sale, in January 1958, of a gasoline station located about 2 1/2 miles away from the subject property. Evidence of the sale of comparable property may be admitted if it is shown that the other property is substantially similar in its characteristics of value and locality; that the sale thereof was bona fide and such as to exemplify the bargain of a willing seller and *528 a willing buyer, and that the sale occurred within a reasonable time of the valuing date of the property sought to be condemned. In re Port of New York Authority, 28 N.J. Super. 575, 581 (App. Div. 1953). Since the determination of the similarity of the property ought not to be governed by a rigid and inflexible standard, the decisional law has bestowed upon the trial judge a wide discretion in deciding whether the conditions admit of reasonable comparison. Ibid. In such cases the court should permit a reasonably exhaustive inquiry on cross-examination of the expert's experience, his familiarity with the sales, the sources of his information, the points of similarity as well as the points of difference between the properties, their proximity and adaptable uses and the intrinsicalities of the sales. Ibid.
Prior to receiving the testimony of Boals on this subject the court permitted the State to cross-examine him at considerable length with respect to comparability. While this examination developed that the property sold is located at a busy intersection of main roads in another municipality, whereas the subject property is situated on a secondary road, it also appeared that in many other respects the two properties were similar. In this posture of the proofs we think that the court was within the proper exercise of its discretion in permitting Boals to testify to the consideration paid for the other property. Moreover, we observe that in its charge the court expressly called the attention of the jury to this testimony and said:
"Williams has introduced in evidence as to the sales price of a going gas station business on a lot of comparable size with buildings adapted for gas station use. This evidence was introduced to show the value of the gas station site at a point approximately two and one-half miles from the Williams station at the intersection of Delsea Drive and Cooper Street an intersection of two busy roads and in a business and residential area. There are obvious differences in the two locations. You are not bound by any figures used. You will weigh and consider these figures keeping in mind that it is practically impossible to find two properties identical in all particulars. You consider this evidence along with all the facts and circumstances presented in reaching your decision."
*529 On a motion for new trial which was denied by the trial court, the verdict was challenged as being excessive, i.e., that it was contrary to the weight of the evidence. The weight of the evidence is not argued on this appeal, nor is it included in the "Statement of Questions Involved." The questions here presented, as we have already noted, relate to the admissibility of the evidence involved, as distinguished from the weight thereof, and the qualifications of Dierolf as an expert.
For the reasons expressed the judgment is affirmed.