59 N.J. Super. 343 (1960)
157 A.2d 731
THE PORT OF NEW YORK AUTHORITY, PLAINTIFF,
v.
JOSEPH C. HOWELL, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 18, 1960.
*346 Mr. Russell E. Watson, attorney for the plaintiff.
Mr. William V. Breslin, attorney for the defendant.
LEYDEN, J.S.C.
The Port of New York Authority publicly announced the second decking of the George Washington Bridge on January 13, 1955. The improvement is necessary because of the present heavy and anticipated increase in vehicular traffic. The project is a gigantic one from the standpoint of engineering, of construction and of financing, requiring the widening of the New Jersey approaches and exits to and from the bridge (commonly referred to as the Bridge Plaza area), located in the Borough of Fort Lee. In addition, new depressed highways to and from the second deck are in the course of construction, as well as old marginal roads relocated and rebuilt. It became necessary, therefore, for the Authority to acquire by purchase or condemnation numerous parcels of real estate.
Our Legislature has given the power of eminent domain to the Authority by N.J.S.A. 32:1-35.1 et seq., R.S. 32:1-75, 32:1-132, and N.J.S.A. 32:1-35.15, 17a and 17b, under which it may proceed under our general Eminent Domain Act, R.S. 20:1-1 et seq., or, at its option, under the so-called Airport Acts, supra. It elected to proceed under the Airport Acts and the cases were heard by me.
*347 There are recognized basic rules to follow in arriving at just compensation which are applicable in all the cases. Our Constitution provides: "Private property shall not be taken for public use without just compensation. * * *" 1947 Constitution, Art. I, par. 20. Just compensation means the payment of such a sum of money to the owner of the property taken or damaged as will make him whole; that is, upon the receipt by him of the compensation and damage awarded he will not be any poorer by reason of his property being so taken or damaged; Bowers v. Town of Bloomfield, 81 N.J. Eq. 163 (E. & A. 1913).
I am therefore charged with the duty of making an award in keeping with the spirit of the Constitution in that a property owner should receive just compensation for his property taken and damages, if any, as may result to the residue of the property. When we speak of just compensation, we have in mind a figure that will be fair and just, not only to the property owner, but also to the condemning authority. The word "just" intensifies the meaning of the word "compensation," conveying the idea that the equivalent to be paid for the property taken shall be real, substantial, full, and ample. This expression in the Constitution cannot be diminished. Currie v. Waverly & N.Y.B.R. Co., 52 N.J.L. 381 (E. & A. 1890). The landowner is entitled to receive the fair price for any permitted use for which the land has a commercial value of its own in the immediate present or in reasonable anticipation in the near future. This concerns the market value, having the reasonably anticipated permitted use in view. The rule limits the proof to the value of the land as of the control date, i.e., the date of taking, in the condition of the land at that time and to the uses to which it is naturally adapted and restricted. It excludes speculative and possible use if improvements and changes were made. Matters that are collateral, involving calculation of costs and profits, are too remote; Currie v. Waverly & N.Y.B.R. Co., supra; Ringwood Co. v. North Jersey District Water Supply Comm., *348 105 N.J.L. 165 (E. & A. 1928). In this connection local planning and zoning regulations in effect as of the control date are material and relevant on the question of usability and have a vital bearing on the commercial value of the land; Overpeck Land Corp. v. Village of Ridgefield Park, 104 N.J.L. 402 (E. & A. 1928); State, by State Highway Com'r. v. Gorga, 45 N.J. Super. 417 (App. Div. 1957), modified, 26 N.J. 113 (1958).
Buildings, trees, shrubs, top soil, etc., underlying stone, sand and gravel are component parts of the land and are not to be valued separately and apart from the land, but it may be shown to what extent the land is enhanced in value thereby, subject, of course, to the use restrictions imposed by valid local zoning regulations; In re Housing Authority of City of Newark, 126 N.J.L. 60 (E. & A. 1941); Manda, Inc. v. Delaware, L. & W.R. Co., 89 N.J.L. 327 (E. & A. 1916); Ringwood Co. v. North Jersey District Water Supply Comm., supra; Ross v. Commissioners of Palisades Interstate Park, 90 N.J.L. 461 (Sup. Ct. 1917).
One of the tests to be applied is to ascertain the price the lands would bring in the hands of a prudent seller at liberty to fix the price and the conditions of the sale. In other words, what a willing buyer not compelled to buy would give to a willing seller not compelled to sell. City of Trenton v. Lenzner, 16 N.J. 465 (1954). Another test is to consider the total value of the property before anything is done by the condemning authority, then consider the value after the property has been taken. The difference between the two should represent the amount of money the property owner should receive.
In the absence of a statute authorizing it, injuries to a business or a loss of profits resulting from the condemnation of a fee is not an element of damage in determining just compensation for the permanent taking of that fee. The sovereign or condemning authority ordinarily takes the fee, as was done in the cases now before me. The rule in such cases is that compensation for the fee interest does not include *349 future loss of profits, expenses of moving removable fixtures and personal property from the premises, the loss of good will which inheres in the location, or other like consequential losses which would ensue from the sale of the property to someone other than the sovereign or condemning authority. No doubt all of these elements would be considered by an owner in determining whether and at what price he would willingly sell and by a buyer whether and at what price he would be willing to buy, but the courts have generally held that the items mentioned are not to be reckoned separately as part of the just compensation. Income derived from a business conducted depends upon various factors not attributable to the land and furnishes no criterion for the determination of the market value thereof; United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390 (1945); Amory v. Commonwealth, 321 Mass. 240, 72 N.E.2d 549, 174 A.L.R. 370 (Sup. Jud. Ct. 1947).
All real estate is considered unique and its value is the subject matter of special study and knowledge. It is a subject little known to the public generally, hence we must seek the aid of opinion evidence of experts in the real estate field to assist in solving the problem of what sum will represent just compensation for a particular parcel of land as of a given time. The testimony of such experts is entitled to respect. Their testimony must, however, be submitted to the judgment and consideration and be weighed by the trier of the facts as part of the evidence in connection with the other facts in a particular case. The office of the testimony of experts is to aid and assist the trier of the facts, not to dominate or control him in the decision of the disputed question. Their opinions are deductions from the evidence and do not conclude the trier of the facts. He is required upon his own responsibility to decide the question after a comparison and consideration of all of the evidence aided by the expert opinions if, in fact, those opinions do give any aid and assistance; State Highway Comm. v. Mayor and *350 Board of Aldermen of Town of Dover, 109 N.J.L. 303 (E. & A. 1932); Hinners v. Edgewater & Fort Lee R. Co., 75 N.J.L. 514 (E. & A. 1908); State Highway Comm. of New Jersey v. Lincoln Terminal Corp., 110 N.J.L. 190 (E. & A. 1933).
I have viewed the premises and make use of that view in forming my judgment of the testimony and in reaching an opinion upon its consideration. My conclusions are based upon the testimony as thus understood by me and applied to what I have seen. My judgment of the testimony has in some cases been modified and, in other instances, controlled as the result of my view. It follows as to some testimony, that to understand it in the light of my view is to discredit it, while as to other testimony, to so understand it is to accept it even in the face of contradiction and denial; Hinners v. Edgewater & Fort Lee R. Co., supra; State Highway Comm. of New Jersey v. Lincoln Terminal Corp., supra.
All of the properties with which I have had to deal are located in the C-3 zone by the zoning ordinance of the Borough of Fort Lee, adopted December 7, 1955 and known as Ordinance No. 635, as amended August 1, 1956 by Ordinance No. 655, and as further amended October 3, 1956 by Ordinance No. 660. Under its provisions the following uses as of September 5, 1958 are permitted: retail business establishments; banks; professional or office buildings; private schools; clubhouses; apartment buildings of six stories or less in height; public schools, libraries or museums; churches; parks, playgrounds or athletic fields; private greenhouses; telephone exchange buildings; restaurants connected with apartment buildings; miscellaneous signs connected with the above uses; parking lot use but only with the consent of the mayor and council (this under ordinance of December 22, 1954, known as No. 608).
The uses specifically prohibited in C-3 zone are buildings exceeding eight stories in height, dwellings except apartment houses, gas stations, motels, pool halls, billiard parlors, *351 bowling alleys, warehousing, manufacturing, and the use of any building or land for taking-off or landing of any aircraft.
The Howell property is located on the southeast corner of South Marginal Road and Center Avenue, known as block 175, lots 12 and 13. Lot 13 is a small piece approximately 26 feet along South Marginal Road, 22 feet wide adjacent to the old Public Service right-of-way. The plot is irregular in shape and contains 9,800 square feet, with 50 feet frontage on an arc on Center Avenue and about 180 feet along South Marginal Road, with an average width of 53 feet, more or less. The rear of the property is below the present grade of South Marginal Road. On it are a 2 1/2-story frame stucco six room and bath dwelling about 40 to 50 years of age but in good repair, containing 23,500 cubic feet, and a garage. Along South Marginal Road is an 80-foot retaining wall, two feet above the road, with a two-foot iron railing.
Title vested in the Authority September 5, 1958, and the premises were viewed by me May 22, 1959 in anticipation of the demolition of the dwelling house.
Mr. Ben Green, a witness called by the landowner, testified to his study and knowledge of sales in the Fort Lee area sufficiently to qualify him to speak as an expert and give his opinion of its value. In Mr. Green's opinion the fair market value as of September 5, 1958 is the sum of $101,000. He put a value of $90,000 on the land, and $11,064 for the buildings and the retaining wall. He gave no consideration to the Port of New York Authority purchases at private sale of other Bridge Plaza properties as an indication of value. In his opinion the highest and best use of the property was a use permitted in the C-3 zone, but he conceded that between 1955 and 1958 no properties in the Bridge Plaza area took advantage of the permissible use. In fact, it was conceded generally that there had been no commercial building in what is known as the Bridge Plaza since the George Washington Bridge was completed in 1929, although the erection of office buildings was a permissible use in this area by the zoning ordinance adopted in 1941.
*352 Arthur J. Rooney, a witness called by the condemning Authority, gave testimony of his study of the subject matter, his knowledge of comparable sales of properties in the vicinity. His opinion of the value as of September 5, 1958 is $31,700 as a residential use and not as a business property, taking the position that the C-3 zoning of the area in December 1955 was fanciful and unrealistic since there had been no building of any commercial properties in the area since the bridge was originally built. Mr. Rooney broke down his estimate as follows: the dwelling $13,984, the garage $150, totaling $14,134, and $17,577 for the land including a 15% corner influence, and rounded out at $31,700.
Mr. Franklin Hannoch, another witness called by the condemning Authority, whom defendant stipulated could qualify as an expert and thus speak of value, gave his opinion of the market value of the land and buildings as $30,200. He also considered the Howell property as residential and not business, as in his opinion it is economically not feasible to put business on the lot. He relied on the same comparable sales as Mr. Rooney.
After considering and comparing all the testimony in the light of my view and further taking into account that the property is presently zoned for limited business and commercial uses, with residential uses except apartment buildings prohibited, I have concluded that just compensation for this land so taken is the sum of $39,134.