68 N.J. Super. 559 (1961)
173 A.2d 310
THE PORT OF NEW YORK AUTHORITY, PLAINTIFF-RESPONDENT,
v.
JOSEPH G. HOWELL, DEFENDANT-APPELLANT, AND DOROTHY FEISTEL, ET AL., DEFENDANTS.
THE PORT OF NEW YORK AUTHORITY, PLAINTIFF-RESPONDENT,
v.
ANTONIO MAISANO, ET AL., DEFENDANTS, AND M AND D REALTY CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1961.
Decided July 27, 1961.
*561 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. William V. Breslin argued the cause for defendants-appellants (Mr. Francis B. Rusch, of counsel).
Mr. Russell E. Watson argued the cause for plaintiff-respondent (Mr. Robert S. Tobin, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
Appellant property owners seek the reversal of judgments entered in the Superior Court, Law Division, in condemnation actions instituted by the Port of New York Authority. The Authority elected, pursuant to the option accorded to it by N.J.S.A. 32:1-132, to proceed under the Airport Act, N.J.S.A. 32:1-35.15. The challenged judgments were entered after an extensive trial without a jury. By order of this court the appeals from the respective judgments were consolidated.
Two properties, both located in the Borough of Fort Lee, were the subject of the condemnation proceedings here under review  one known as the Howell property, the other as the property of M and D Realty Co., Inc. The properties, *562 with many others, were the subject of acquisition by the Port of New York Authority for the construction of approaches to George Washington Bridge in connection with the addition of a second deck to that structure.
The Howell property had a frontage of 180 feet on South Marginal Road (facing an area known as Bridge Plaza, west of the approach to the George Washington Bridge) and 50 feet on an arc on Center Avenue. The property had an average depth of 53 feet and contained 9,800 square feet. At the time of the taking, September 5, 1958, a two and one-half story dwelling house and garage were located on the lot. The trial court entered judgment for the "taking" of the Howell property in the sum of $39,134. Port of N.Y. Authority v. Howell, 59 N.J. Super. 343, 352 (Law Div. 1960).
The property of M and D Realty Co., Inc. was located on the southeast corner of South Marginal Road and Lemoine Avenue. It contained 7,215 square feet. With the exception of a small shanty the land at the time of the "taking," October 17, 1958, was vacant. It was operated as a used car lot. Judgment in the condemnation action was awarded by the trial court in favor of the property owner in the sum of $54,990.
The propriety of the aforesaid judgments is challenged on several grounds, some of which apply to both appeals. Where the subject matter discussed is applicable to one property and not to the other we shall so indicate.
Initially appellants attack N.J.S.A. 32:1-132 on constitutional grounds. The precise challenge here made was rejected in In Port of N.Y. Authority v. Heming and Cervieri, 34 N.J. 144 (1961), appeal dismissed, Cervieri, et al. v. Port of New York Authority, 81 S.Ct. 1676 (1961), decided since the appeals in the instant cases were taken. That decision is controlling in the case at bar.
Appellants next assert that the trial court erroneously compelled them to produce their proofs first instead of requiring the Port Authority to do so. Appellants state in *563 their brief that they feel "constrained to raise this point although our courts have stated that this determination is a matter of discretion of the trial court * * *. Ringwood Co. v. North Jersey District Water Supply Commission, 105 N.J.L. 165 (E. & A. 1928)." Appellants urge that the Ringwood decision is inequitable and that there is "no cogent reason why the old rule * * * should continue to be followed." We perceive no reason why it should not be followed. The trial court in the case at bar adhered to the practice which has existed in this State for many years. Appellants advance the further contention that in a non-jury condemnation case (emphasis supplied), such as the one at bar, the "condemning authority should be compelled * * * to proceed first." No persuasive reason is advanced why any different rule should prevail in a non-jury case.
Appellants next contend that in the presentation of appellant Howell's case the trial court committed prejudicial error in refusing to admit proffered evidence of a month to month rental of $500 paid to the Port Authority as lessor of the aforesaid M and D Realty Co., Inc. property, following the Authority's acquisition of it. The suggested relevancy of the proposed proof was that the M and D property was a tract comparable with Howell and that implicit in the rental arrangement was an expression of the Authority's own view of the valuation of the M and D property, thus making the suggested proof evidential in the Howell case. However, it was in evidence that the tenant had paid rent of $500 per month prior to the acquisition as well. With the same general approach appellants sought, unsuccessfully, through the medium of testimony of their real estate expert, to introduce evidence of a sale on January 15, 1959 of allegedly comparable property. Under the particular facts of the instant case we determine that the court's ruling was within its "wide discretion," (In re Port of New York Authority, 28 N.J. Super. 575, 581 (App. Div. 1953); State, by State Highway Com'r v. Williams, 65 N.J. Super. *564 518, 528 (App. Div. 1961)), and that no abuse of that discretion is revealed by the record before us.
Appellants next urge that, "in weighing the lack of commercial development in the area, the trial court should have considered the fact that the owners therein were unwilling to sell their land." This argument is projected against the conceded fact that the area properties are located in the C-3 zone by the prevailing ordinance of the borough. As set forth in its opinion in the instant case, Port of N.Y. Authority v. Howell, supra, 59 N.J. Super., at p. 350, the permissible uses under the ordinance provisions as of September 5, 1958 were substantially commercial in nature and included a wide variety of business and professional establishments. Dwellings, except "apartment buildings of six stories or less in height," were excluded. The use of the Howell property on which the forty-year-old dwelling was erected was therefore non-conforming.
Appellants' offer of proof envisioned testimony by a real estate broker for appellants that he had been "given an assignment in 1952 to acquire Bridge Plaza property" but had been unsuccessful in that endeavor. Appellants' counsel offered to develop individual instances of such unsuccessful efforts, which he said would demonstrate that respective owners desired to retain the properties as residences and that would explain the alleged inactivity in the real estate market in the area between 1955 and 1958. Based on that theory appellants urged that the area properties were unique and that the trial court should have "looked beyond the usual guides when items are not offered on the market," should have considered the reasons therefor, determined that "the value was there" and that appellants "should be entitled to it, regardless of the use to which the land was devoted at the time of taking." However, the trial judge did take "into account that the property is presently zoned for limited business and commercial uses * * *." Port of N.Y. Authority v. Howell, supra, 59 N.J. Super., at p. 352.
*565 In support of their aforesaid offer of proof appellants cite the case of State, by State Highway Com'r v. Burnett, 24 N.J. 280 (1957). The trial court held that the principles enunciated in Burnett furnished no support for appellants' instant argument. We are of the same opinion. In Burnett the property involved was unique in character, customary methods of determining its market value were unavailing and therefore "the trial judge did not abuse his discretion" in adopting another formula for valuation involving reproduction cost less depreciation. (Burnett, at p. 293.) The trial court held that the Howell property was not unique and no reason existed for departing from the normal methods of testing its market value. The record furnishes adequate support for the court's holding. Appellants cite City of Trenton v. Lenzner, 16 N.J. 465 (1954) as authority for the proposition (as stated in their brief) that the "very essence of fair market value is the price agreed upon between a willing seller and a willing buyer." From that premise they apparently conclude that, as the owners of property in the area refused to sell because (as counsel urged at trial and as their brief reiterates) "they chose to stay there and pass their benefits on to their children," some other and different method of valuation should be determined. The Lenzner opinion affords no support for the contention that the actual owner's desire not to sell can be a factor in determining market value. In the opinion the court (at p. 479) said: "Its fair market value, measured by the price which would voluntarily be agreed upon between the hypothetical owner willing to sell and the hypothetical buyer willing to buy, would be fixed after the due weighing of all the factors which customarily enter into their purchase and sale negotiations." In short the state of mind of the actual owner of the land is neither controlling nor of aid in determining what a hypothetical buyer and seller respectively would pay and receive. The court properly rejected the offer of proof.
*566 Appellants' next attack on the judgments is based on the trial court's refusal to permit their real estate and land appraisal expert to testify concerning a "hypothetical office building" which conceivably could be erected on the Howell property. The proposed testimony involved an analysis of the cost of such a building, the gross rental which might be received therefrom and the estimated cost of operation as a basis for estimating an annual net income, which would then be capitalized to give the approximate value of the combined product of building and land, to be followed by a determination by the expert as to the portion of such value to be allocated to the land in question. The proposal was rejected by the trial judge and rightly so.
The trial court characterized the suggested testimony and the conclusion to be derived therefrom as pure "conjecture." A brief outline of the proposed proofs, as presented by appellants' counsel, demonstrates the correctness of the trial court's assessment of such testimony. The expert stated that, in considering the value of the property, he felt that the "highest and best use was for commercial purposes," specifically "a four-story office and basement building." He added: "I proceeded to put a hypothetical office building on there bringing in the rents in that area." Appellants' counsel then recited his specific offer of proof as follows:
"I would like to submit my offer of proof * * * on the capitalization basis of what income a two-story or a four-story office and basement building would realize on this property, setting forth fully all of the parts therein which this witness ascertained from investigation would result in a valuation on a capitalization basis of $95,000."
During the course of the ensuing interrogation of the witness and colloquy with appellants' counsel the court indicated that such proofs would have to show what "type of construction" would be selected; what "improvements" would be installed; whether the building was to be "air-conditioned"; what kind of heating medium would be used; whether there would be a demand for the available rental *567 areas and whether there would be full or partial occupancy. All of these items appellants' counsel stated he "would intend to prove * * * insofar as it is obtained by this witness' participation in actual negotiations with the builder as to these costs." The court commented that if it honored appellants' offer it would be "trying an issue of what kind of building it is going to be and how much the building is going to cost" and "lose * * * sight of the fact that the question is what is just compensation" for the taking of the property involved. We are in accord.
Thereupon appellants' counsel, through the medium of testimony of a mechanical engineer, attempted to introduce proof of the cost of an existing Fort Lee office building (identified by a photograph thereof, and its construction detailed in plans and specifications also presented) accompanied by proof that the building would be suitable for the Howell location. Appellants' counsel states that the testimony was projected on the theory that a purchaser would contemplate the availability of the property for the erection of such a structure and that the real estate expert in "fixing the value of this property * * * considered as one of the factors the return on the land if an office building were erected thereon." The offer of proof, encompassing cost items for a four-story building, as well as a two-story building, was to be followed by recalling the real estate expert who, based on the figures presented by the engineer, would then "arrive with respect to a two-story office building and basement at a capitalization of $95,000 for the land only, and with respect to the four-story office building, $126,600."
Appellants' counsel, insisting that the trial court's ruling was prejudicially erroneous, urges in his brief that it is "common knowledge that real estate purchasers and investors determine land values by using what is commonly known as the Land Residual Process." Counsel stressed before the trial court, and reiterates before us, that he was not offering the evidence "as proof of the intrinsic value itself" but as *568 "proof of one of the factors" which the real estate appraiser "had a right to take into consideration as an expert in arriving at his value."
Appellants contend that the trial court's rejection of the proffered testimony is contrary to the rule expressed in State, by State Highway Com'r v. Burnett, 24 N.J. 280 (1957) where the court at p. 291, referring to Ranck v. City of Cedar Rapids, 134 Iowa 563, 111 N.W. 1027, 1028 (Sup. Ct. 1907) stated that the Iowa Supreme Court, dealing with "the reception of evidence according separate values to land and improvements, noted that `the true rule seems to be to permit the proof of all the varied elements of value; that is, all the facts which the owner would properly and naturally press upon the attention of a buyer to whom he is negotiating a sale and all other facts which would naturally influence a person of ordinary prudence desiring to purchase.'"
The propriety in an appropriate case of receiving evidence according "separate values to land and improvements" and in certain circumstances to find no "abuse of discretion in admitting evidence of reproduction costs of the improvements which reflected physical depreciation, as well as the expert opinion assigning a value to the property as vacant land" (State, by State Highway Com'r v. Burnett, supra, 24 N.J. 280, at p. 293), has nothing whatever to do with the admissibility of the evidence sought to be presented in the instant case involving the construction of a "hypothetical office building" on the Howell tract.
Appellants suggest in their brief that our opinion in State, by State Highway Com'r v. Hudson Circle Service Center, Inc., 46 N.J. Super. 125 (App. Div. 1957), supports their position as recognizing "the probative value of capitalization." Not so. We were there considering the value of an existing lease with reference to an existing improvement on the property. The decision had nothing to do with the proposition advanced by appellants in the instant case involving the application of a hypothetical *569 capitalization rate to an estimated income flowing from the operation of an office building which theoretically might be erected on the land. The trial court's rejection of appellants' proposed proofs based on a calculation of profits and costs arising from such a theoretical undertaking was fully justified. In re Morris & Cummings Dredging Co., 96 N.J.L. 248, 251-252 (E. & A. 1921). See also: In re Housing Authority of City of Newark, 126 N.J.L. 60, 65 (E. & A. 1941); Ringwood Co. v. North Jersey District Water Supply Commission, supra, 105 N.J.L. 165, 169 (E. & A. 1928); Manda v. City of Orange, 82 N.J.L. 686, 689 (E. & A. 1911).
Appellants next contend that the trial court erroneously prohibited defendant "from showing through plaintiff's own witness, the reasonable probability of an assemblage of the Howell land and that of a neighbor." Reference to the record shows that the specific questions barred were whether in the opinion of the witness there was "any reason from a real estate viewpoint why Howell and his next door neighbor, Lyons, could not assemble and join together their two pieces." Again of the same witness: "As of September 5, 1958 * * * from a real estate viewpoint, did not Howell's and Lyons' property have a reasonable anticipation of an assemblage value?" And finally of the same witness: "As a real estate expert, do you consider the fact that if there is a reasonable probability of an assemblage, that relates to one or two parcels to be assembled?" The questions were presented with reference to the Howell property. The trial court sustained objections thereto, observing that there was no proof of any such planned combination. Appellants' counsel cites N.J. Turnpike Authority v. Bowley, 27 N.J. 549, 555, certiorari denied 358 U.S. 927, 79 S.Ct. 312, 3 L.Ed.2d 301 (1958). We note, however, that the aforesaid questions were addressed on cross-examination to plaintiff's expert and that the property owner had presented no testimony tending to prove reasonable probability of assemblage.
*570 Further claim of prejudicial error is asserted by appellants to flow from the court's rejection of appellants' offer of proof relating to the financial restraint imposed on the Borough of Fort Lee. Appellants' brief states that the offer of proof in substance was to the effect that "the Borough of Fort Lee for a period of years was under a financial restraint affecting all its property by reason of its filing a petition in the Federal Court as a result of which a Board of Liquidation controlled some of its properties" and that such situation had a deterrent effect on real estate sales in the borough. Appellants admitted that the financial restraint had been removed some time before the taking but sought the introduction of the evidence as allegedly explanatory of the prior realty market. The trial court, in rejecting the offer, said:
"Fort Lee was under this restraint, so to speak, and then I suppose a willing buyer wouldn't pay as much as if it wasn't under a restraint, but, regardless, if they did come to an accord regardless of the restraint, wouldn't that represent the market value of the property?"
The court was correct. The issue was the determination of just compensation for the acquisition of the subject properties. The trial court properly observed that such proposed evidence would introduce collateral issues into the case. Compare State by State Highway Com'r v. Gorga, 54 N.J. Super. 520, 527-528 (App. Div. 1959).
Appellants next emphasize that they had presented testimony of two real estate brokers who stated that they had received inquiries as to the possibility of purchasing property for "commercial usage" in the Bridge Plaza area and that the trial court's opinion indicates that it had failed to "consider" such proof of purchaser "demand" for such use. (One of the brokers had testified that he "tried to get space" for such prospects but "we couldn't find any or nobody would sell.")
Examination of the trial court's opinion does not support appellants' criticism. The trial court specifically noted the *571 fact that the zoning provisions applicable to the area were generally commercial in character and gave that factor due weight despite the fact that there had been no actual commercial development in the vicinity of the property under scrutiny. Port of N.Y. Authority v. Howell, supra, 59 N.J. Super., at pp. 350-351. However, mere inquiries (the testimony of the brokers reveals no actual offers) by prospective commercial investors who had as was testified ultimately selected locations in other municipalities, actuated in such selections by unidentified motives and for unspecified reasons, were not proof of actual market demand in the Bridge Plaza area. During the presentation of the testimony by one of the aforesaid real estate brokers the following appears in the record:
"The Court: Well, the best I can get out of it is that these people of whom Mr. Ettore speaks would like to locate in the Bridge Plaza if they could find suitable property and if they could find a willing seller who would agree with them on the price of the property, but that hasn't happened. Nothing was built along there at all, was there?
The Witness: No."
Moreover it is evident from the testimony, which as aforesaid appellants assert the court did not "consider," that it related to inquiries for available land of a size far in excess of the Howell property and, as above noted, there was no substantive proof of the reasonable probability of assemblage. Appellants are unjustified in their aforesaid criticism of the trial court's opinion in dealing with this subject.
Specifically with reference to the appeal by M and D Realty Co., Inc., it is contended that the trial court committed prejudicial error in excluding a partially completed deposition of one Joseph L. Rusch, a real estate broker and appraiser appearing for appellant. That witness was so critically ill that the appellant, far in advance of the trial of the case, recognized that he could not attend court and arranged to take his deposition. The Authority consented. *572 The witness' direct examination by the counsel for various property owners, including the Realty Company, took place on February 27, 1959, pursuant to an order of the court dated February 6, 1959, but the witness' physical condition became so grave during the course of the examination on that day that it was recognized by counsel for both parties that it was impossible for the witness to continue. His death occurred April 11, 1959 without any further testimonial examination. The trial of the case commenced on December 2, 1959, at which time counsel for M and D Realty Co., Inc. offered the aforesaid deposition of Mr. Rusch to the extent it had been taken and in so far as it related to its property. Counsel for the Authority objected because the deposition was incomplete and he had not had the opportunity of cross-examination of the witness. The court excluded the deposition. Such ruling, as stated above, appellant company contends was erroneous. Appellant urges that the circumstances surrounding the taking of the examination, arrangements between counsel at its termination and the subsequent inaction of the Authority's attorney as to the resumption of the interrogation were sufficient for the trial court to conclude that the Authority had waived its "right of cross-examination" of the witness.
Reference to the record reveals that during the course of the taking of the deposition of Mr. Rusch (both counsel then recognizing his grave physical condition) certain written appraisals he had made, including that of appellant's property, as well as written statements with reference to allegedly comparable properties, were offered by appellant. They were received in evidence with the understanding that they accurately reflected the witness' opinion as if he had testified to their contents, and with the further understanding that they were "subject to any objections" Authority counsel might have and subject to that counsel's "right of cross-examination." Appellant's counsel then specifically stated: "Subject to cross-examination as we will agree * * * at the time and place that we will agree."
*573 It is clear from the colloquy at trial between counsel and the court, at the time the deposition was offered in evidence, that both counsel on February 27, 1959 had recognized as above stated that Mr. Rusch was then too ill to continue.
When the abbreviated deposition was offered "in evidence" by appellant and its receipt as an exhibit resisted by respondent's counsel, the record reveals that the recollections of respective counsel as to the oral arrangements made at Mr. Rusch's home with reference to the cross-examination were at variance. Respondent's counsel insisted that he had not waived his right of cross-examination; that he merely postponed it "out of regard for the witness' extreme disability" and that, as he asserts in his brief, such examination was to be undertaken at a time "to be agreed upon mutually." At trial he relied upon the aforesaid record. The recollection of appellant's counsel on the contrary was that it was orally arranged immediately after the taking of the deposition that respondent's counsel would advise appellant's counsel if he wanted to cross-examine. The latter's brief further states that the examination was "expressly * * * waived" by respondent's counsel and "if he did not waive" it "he did not pursue his right" to it. Neither counsel communicated with the other on the subject until after Mr. Rusch's death. Under the circumstances we find no justification for holding that the trial court committed prejudicial error in determining that the opportunity for cross-examination had originally been preserved, had subsequently been lost through no fault of respondent, and that as a consequence the deposition should be excluded. Henderson v. Twin Falls County, 59 Idaho 97, 80 P.2d 801, 802 (Sup. Ct. 1938).
Appellant, M and D Realty Co., Inc., next seeks to set aside the award of $54,990 as against the weight of the evidence. Apart from all collateral contentions, it is evident the basic fact to be stressed is that the trial judge resolved the issue of the amount to be awarded by assessing the sharply conflicting expert testimony, aided by his view of the premises. State Highway Comm. v. Lincoln, &c., *574 Corp., 110 N.J.L. 190 (E. & A. 1933). His ultimate determination finds support in the record. We refuse to disturb it.
Finally, appellant M and D Realty Co., Inc. contends that error was committed because the trial court in its opinion in the Realty Company case incorporated by reference certain "basic principles of law set forth fully" in the Howell opinion, among them one relating to consequential losses, specifically one relating to the exclusion of evidence of loss of good will in evaluating the property under condemnation. Port of N.Y. Authority v. Howell, supra, 59 N.J. Super., at pp. 348-349. The complete answer to this contention is that in the M and D case no evidence referable to good will, or the value thereof, if any existed, was offered or any claimed loss thereof asserted.
We have examined other points raised by appellants and find no merit in them.
The judgments in both cases are affirmed.