TUCKER, Judge.
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plaintiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana, area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below:
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.5 feet from the top of the pole. There is a six foot space beneath it, between it and the next cross-arm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being sixty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eighths of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top cross-arm, and two conductors on the bottom crossarm. The wires that carry the “hot electricity,” the phase conductors, are 336-400 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum, and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the code *313 calls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts for the surface rights expropriated and for severance damage caused to the remainder. Ten of these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
In the instant suit judgment was awarded against defendant giving Dixie Electric a right-of-way across his property more particularly described as follows:
“A certain tract or parcel of land situated in Section 26, T-S-S, R-3-E, Livingston Parish, Louisiana, and being more particularly described as follows: From the southwest corner of the northeast quarter of the southeast quarter of said section 26, run N 0° 03' W, 663.01 feet; thence S 89° 33' E, 423.80 feet to a point, said point being the southwest corner of the property of William E. Sib-ley; thence N 0° 03' W, 8.66 feet along the west property line of William E. Sibley to a point and the Point of Beginning; thence continue N 0° 03' W, 113. 88 feet along same to a point; thence S 61° 28' E, 259.90 feet to a point; said point being on the south property line of William E. Sibley; thence N 89° 33' W, 212.42 feet along the southern property line of William E. Sibley to a point; thence N 61° 28' W, 18.10 feet to a point, and the Point of Beginning, containing 0.32 acres more or less”.
The trial judge awarded defendant $320.00 for the property expropriated, $4,227.00 for damages incurred in connection with the expropriation, and $1,940.00 for severance damages.
Dixie Electric has appealed alleging as error the awarding of damages for the removal of a house said to be fraudulently moved onto defendant’s property after the right-of-way had been staked, and the awarding of severance damages, and the awarding of the full value of the property expropriated. Defendant answered the appeal asking for an increase in the value of the land expropriated. Alternatively defendant asks that his award be increased according to the following schedule:
Value of property taken $ 320.00 Value of improvements 4,427.00
Cost of relocation of house 4,427.00
Severance damages 3,000.00
12,174.00
Although neither written nor oral reasons for judgment were rendered by the trial judge, it is obvious that he used the expert appraisal testimony of Dixie Electric’s witness, James E. Carpenter, who listed three comparable sales ranging from $809.00 per acre to $1,111.00 per acre. Mr. Carpenter adjusted the fair market value of defendant’s property, which he appraised as rural residential at $1,040.00 per acre. The value of the 0.32 acres taken was fixed at $323.00. There was a $10.00 minus error in Carpenter’s calculation and the correct rounded figure is actually $333.00. Apparently the trial judge considered it a complete taking, but we consider Carpenter’s evaluation of the taking at 80% of fee a more reasonable figure, since defendant has retained substantial surface rights to his property. The portion expropriated constitutes the southern most tip of his property. The installation which is described above is of a simple nature which will not interfere with defendant’s use of the right-of-way for lawn, pasture, roadways or driveways. It is not fenced. The judgment of the trial court will be amended to award defendant only 80% of the *314 value of the property expropriated, in accordance with the appraisal of Mr. Carpenter, or $266.40.
The evidence in the record is overwhelming to the effect that defendant had been informed in November and in December of 1970 that the expropriation would be made by Dixie Electric in accordance with the surveys in the record; yet on January IS, 1971, defendant deliberately moved a house onto his property, squarely into the center of the clearly staked out right-of-way, which was located on the back portion of his property. He located the house 500 to 600 feet from the road and just 26 feet north of the south boundary of his property. Although he had been planning to build a home on his property and had cleared the whole property, he did not locate this recently acquired house advantageously near the road, but directly within the pathway of the transmission line. We can only conclude that defendant was in bad faith in this operation. The evidence does not justify, for the expenses incurred, an award of damages in connection with the removal of the house and this item of the trial court’s judgment in the sum of $4,227.00 will be reversed. See also, State, Dept. of Highways v. Laird, 219 La. 567, 53 So.2d 674 (1951).
 The award of the trial court for severance damages will be reversed, also. Defendant bears the burden of proving that the remainder of his property was diminished in value by the expropriation, and, also, the value of the property before and after the taking. Michigan Wisconsin Pipeline Co. v. Fruge, 227 So.2d 606, 610 (La.App. 3d Cir. 1969), writ refused, 255 La. 149, 229 So.2d 732 (1970). The record is completely devoid of any evidence to indicate that defendant’s property has diminished in value since the expropriation. The best evidence on this subject is provided by Dixie Electric’s appraiser, Mr. Carpenter, whose report contained the following statement:
“As stated in the Site Data Report subject land is primarily high and well drained with a coverage of pine and hardwood. Recently a bull dozer has partially cleared the underbrush, but has not completed the leveling of the land at this time. Since the plot is “L” shaped and lying at an angle to the road fronting it on the North, the Southern most tip lies directly South of the road. It is on this tip wherein the servitude is required and the center line of seruitude (sic) lies just inside this Southern most tip with no poles indicated as being placed thereon. It is not feasible that anyone would contemplate a building program or development other than fencing on this spot. Therefore with this in mind, this appraiser feels the property is not damaged.”
The qualifications of the defendant landowner’s appraiser, Earl R. Graham, are considerably limited and restricted. In any event the two sales upon which he relied as comparables to the subject property do not have the same character, dimensions, location and other perquisites as does the property in question. His testimony is unconvincing, not reasonably grounded, and entitled to little, if any, weight.
For a relatively detailed discussion of the problems entailed and the methods employed in fixing expert witness fees, we refer to the consolidated case of Dixie Electric Membership Corporation v. Floyd McDowell, La.App., 280 So.2d 306, decided this day.
In the instant case the services of Earl R. Graham as an appraiser were engaged by the defendant Sibley sometime in advance of the trial. Mr. Graham was never on the subject property although he was near it, and his examination at best was limited in scope and extent, largely involving personal contacts with the defendant Sibley. This expert did not examine the records in the courthouse to search for comparables. Under the circumstances *315 here we believe that Earl R. Graham is entitled to a fee of $100.00 for his preparatory work and $50.00 for his appearance in court as an expert witness, and that the total sum of $150.00 should be taxed as costs.
For the reasons assigned the judgment of the trial court awarding compensation for the true value of the land taken for the servitude is amended by reducing this sum from $320.00 to the sum of $266.40; the award to the defendant of the sum of $4,227.00 for damages incurred in connection with the expropriation is reversed; the award by the trial court of severance damages is reversed; the expert witness fee of Earl R. Graham is fixed at the sum of $150.00, and same is taxed as costs; and in all other respects the judgment of the trial court is affirmed.
The defendant, William E. Sibley, is cast with the costs of this appeal; the costs of the trial court are to be borne by the plaintiff.
Judgment affirmed, as amended, in part; reversed in part; and rendered.