145 N.J. Super. 63 (1976)
366 A.2d 1017
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM G. ROHRER, DEFENDANT.
Superior Court of New Jersey, Law Division (Civil).
Decided November 10, 1976.
*65 Mr. Remo M. Croce, Deputy Attorney General, for the State.
*66 Mr. S. David Brandt for the defendant.
BIGLEY, J.C.C., Temporarily Assigned.
This matter involves the determination of what constitutes just compensation for the partial taking by the State of a strip of land and a portion of a building which fronts on State Highway 30, the Admiral Wilson Boulevard, in the City of Camden. The purpose of this taking was to effectuate the construction of a widened highway, which action necessitated the taking of all of the lands in front of the building in question and approximately 10% of the building itself.
The physical results of this action have resulted in substantial damage to the remaining structure in the form of injury to the building's heating, plumbing and electrical systems. In addition, the taking has denied all access to the property to and from the Admiral Wilson Boulevard and evoked the necessity to re-establish the structural safety of the building and the adequate functioning of all mechanical systems before the Camden Building Inspector will permit the structure to be occupied by issuing a new certificate of occupancy.
1. The court has considered the testimony of expert witnesses produced on behalf of the State and the property owner concerning the fair market value of the property prior to the State's taking. The court finds such value to be in the amount of $159,000 based upon a comparison of the competing testimony and other evidence produced.
2. The court has heard evidence in the form of testimony by Camden's Chief Building Inspector for the City of Camden that the various damaged systems are in such condition as to warrant their replacement and that the building has certain structural deficiencies which, when taken together, will preclude the issuance of a new certificate of occupancy before renovations and repairs are satisfactorily accomplished. Since it is uncontradicted that the building was lawfully occupied prior to the State's action, the court finds as a matter of fact that the occasion for reinspection *67 and the necessity for a new certificate of occupancy is attributable directly to the State's action. In effect, the taking has moved the building from a status of lawful commercial use to one of noncompliance with municipal regulations, resulting in an inability to make reasonable commercial use of the property.
3. The court has considered evidence produced on behalf of the property owner in the form of expert testimony concerning renovation and repair costs and finds such costs to exceed the fair market value of the building in such a restored condition, which value both sides agree is approximately $75,000.
4. On the basis of the evidence concerning the building's physical condition and its lack of a certificate of occupancy, the court finds that the fair market value of the building for any reasonable commercial use subsequent to the State's action is zero; however, the value of the underlying land is found by this court to be $11,400.
5. Upon consideration of the testimony and evidence produced regarding the cost of demolition of the remaining structure, the court finds such cost to be $29,912.
The State contends that the triggering of the necessity for a certificate of occupancy is a fortuitous exigency and is not a factor to be considered in assessing the fair market value of the building for the purpose of fixing the structure's value after the taking. Alternatively, the State urges that if the requirement of a certificate of occupancy is a factor to be considered in arriving at "just compensation," it can only be so if the conditions required to be cured, in order that the certificate of occupancy may issue, are conditions created by the State, and there is sufficient evidence to support what those conditions are and the cost of curing them.
The court understands this latter argument to mean that only the direct, physical damage to the building caused by the State is compensable and that the State's obligation to pay goes only to the sum of those ascertainable injuries, the *68 State's position being premised on the fact that the building is old and that much of the cost of renovation is attributable to neglect and/or natural deterioration and as such does not result from the taking.
The property owner takes the position that he is entitled to be compensated for the full fair market value of the property prior to the front being removed plus the cost of demolishing the remainder, less the residual value of the land without the building. This is so, it is urged, since the State's action has evoked the necessity of securing a new certificate of occupancy, and since the cost of effecting the necessary restorations will greatly exceed the fair market value of the premises on their completion.
For the reasons which follow hereinafter, the court concludes as a matter of law that as a result of the partial taking, due to the physical damage and the necessity for a new certificate of occupancy, the remaining structure is rendered valueless; accordingly, the award should be as is appropriate for a complete taking.
The measure of just compensation under these circumstances is the value of the entire tract at the time of taking together with the cost of demolishing and removing the building, less the fair market value of the remaining, underlying real property.
In the situation where a condemning authority will take the entire property, a court is faced with the task of determining the market value which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy at the time of the institution of condemnation. N.J. Constitution (1947) Art. I, par. 20; State v. Cooper, 24 N.J. 261, 268 (1957), cert. den. 355 U.S. 829, 78 S.Ct. 41, 2 L.Ed.2d 42 (1957); State v. Speare, 86 N.J. Super. 565, 572 (App. Div. 1965).
The situation at hand, however, is one in which a part of the owner's land and building has been taken. The measure of compensation to be awarded in such a case is gauged by the so-called "before and after" rule, which looks *69 to the difference between the fair market value of the whole property before the taking and the fair market value of the remainder after the taking. Port of New York Auth. v. Howell, 59 N.J. Super. 343, 348 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div. 1961), certif. den. 36 N.J. 144 (1961), and the proximate effect of the taking is also to be taken into consideration in ascertaining the value of the remaining land. Ridgewood v. Sreel Investment Corp., 28 N.J. 121 (1965).
The facts of this case reveal a usable and lawfully occupied commercial structure prior to the taking, with an ascertainable value in the amount found by the court. Subsequent to the taking the premises were left with a substantial portion literally sliced away, leaving the building with severed pipes exposed, electrical wiring dangling and without functioning heating, electrical or plumbing systems. Also, the owner is faced with the necessity of securing a new certificate of occupancy before re-occupancy and renewed commercial use will be permitted.
There is no doubt that a material part of the court's determination on the question of fair market value post-taking is the fact of physical damage to the structure remaining. The additional question posed in this case is whether the fact of the structure being in noncompliance with the municipality's building ordinance after the taking can also be material to the court's findings on the building's post-taking value. The court believes that it can take this factor into consideration; indeed it must, provided such noncompliance is attributable to state action. This is so since a determination on the question of post-taking value must be based on a consideration of the uses the land is adapted for and for what it is available. Central to a determination of suitable use must be whether the structure in question is or is not in compliance with municipal ordinances.
The court believes a clear analogy can be drawn between cases where noncompliance with local zoning ordinances formed an important part of the court's findings or post-taking *70 value. See Port of New York Auth. v. Howell, supra. Courts have recognized that local planning and zoning regulations in effect as of the date of the taking are material and relevant on the question of usability and have a vital bearing on the commercial value of the property. Id., 59 N.J. Super. at 347.
This court believes municipal regulations governing health and safety standards, with which compliance must be had before occupancy and use will be permitted, are similarly "relevant and material" on the question of usability and, as such, have an equal bearing on the commercial value of the property.
It is clear that the State would have to compensate the owner for the physical damage suffered by including the cost of ameliorating such damage in its estimate of fair market value, post-taking. See State v. Birch, 115 N.J. Super. 457, 464 (App. Div. 1971). It seems equally clear that when a partial taking results in a building being put in violation of the city's ordinances, whether they relate to zoning or safety, the court must take the cost of regaining compliance into account in reaching its determination as to value after the taking. And, where the cost of ameliorating such condition exceeds the fair market value of the building at the time of condemnation, the court is justified in finding that a complete taking has been accomplished. See 4A Nichols on Eminent Domain, § 14.23.
The State cannot now be heard to complain that much of the cost of regaining a certificate of occupancy is attributable to the property owner's neglect and/or the inevitable deterioration of an old structure. Surely, the State's expert took such factors into consideration when he placed a value on the property in excess of $150,000 prior to the taking.
If the property enjoyed such value even in light of its deteriorated condition  which value would have been paid if the structure were wholly taken  how can we now credit the State with such deterioration in fixing the building's *71 value under these facts? The simple answer is, it cannot.
In summary, the court has found the fair market value of the property prior to the State's action to have been $159,000 and that such value subsequent to the taking is zero. The property owner is entitled to receive as just compensation the difference between these figures, plus the cost of demolition, which is found to be $29,912, less the value of the underlying vacant land which is $11,400. Just compensation is therefore found to be $177,512.