250 N.J. Super. 19 (1991)
593 A.2d 352
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-RESPONDENT,
v.
F & J PARTNERSHIP, A PARTNERSHIP OF NEW JERSEY, DEFENDANT-APPELLANT, AND MARINE NATIONAL BANK, A BANKING INSTITUTION OF THE U.S.A.; TOWNSHIP OF DOVER, IN THE COUNTY OF OCEAN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1990.
Decided July 5, 1991.
*21 Before Judges GAULKIN,[1] SHEBELL and SKILLMAN.
Peter H. Wegener argued the cause for appellant (Bathgate, Wegener, Wouters & Neumann, attorneys; Peter H. Wegener, on the brief).
George P. Ljutich, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; George P. Ljutich, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is a condemnation action brought by the Department of Transportation (DOT) to acquire land required in connection with the widening of Route 70 in Ocean County. The subject property consists of approximately five acres out of a twenty *22 acre parcel located on the southwest corner of Routes 70 and 9 in Dover Township.
On October 10, 1986, DOT notified the then owner of the property, Joseph A. Citta, of its intention to make the acquisition. Shortly thereafter, Citta sold the property to Vincent J. Craparotta. On December 12, 1986 Craparotta entered into an option agreement with Francis and John Zengel, the principals in defendant F & J Partnership (hereinafter referred to as F & J), to sell them the twenty acre parcel for $3,150,000. That agreement included a recital that:
Purchaser also understands that the DOT has given Option Seller notice of its intent to take five (5) acres of the subject property. Option Purchaser has seen the notices and maps with respect to said taking and is entering this option agreement with full knowledge of the taking. In the event DOT takes more than five (5) acres, then Purchaser may either void this contract or the parties may renegotiate the purchase price.
Thereafter, the Zengels met with representatives of DOT in June, July and September 1987 in an effort to persuade them to redesign DOT's plans for widening Route 70 to eliminate the need for acquisition of the subject property. However, the DOT rejected the Zengels' proposed alternative route widening plan and determined to proceed with the planned acquisition.
During the same time period as their meetings with DOT, the Zengels were also pursuing an application to the Dover Township Board of Adjustment (the Board) for a use variance which would permit commercial development of the property. On October 1, 1987, the Board conducted a hearing on the application at which F & J's appraiser denied any awareness of plans by the State to acquire property in the area. By a resolution dated October 29, 1987, the Board granted F & J a use variance, subject to the condition "[t]hat the applicant submit a site plan for approval within six months of the date of this resolution." Thereafter, F & J exercised its option to purchase the property.
F & J then retained the engineering firm of Fellows, Read and Associates (Fellows, Read) to prepare a site plan. Fellows, Read utilized Matthew Smith as its project manager for the *23 plan; Smith was also the secretary to the Board of Adjustment at that time.[2] Smith commenced preparation of the site plan sometime in January 1988, and F & J filed the plan with the Board on March 17, 1988. The completed plan included a five story, 100,000 square foot hotel and restaurant located in the middle of the five acre parcel which the State planned to acquire.
At the same time F & J was filing its site plan application with the Board, DOT officials were attempting to schedule a meeting with the Zengels in order to negotiate the acquisition of the five acre parcel. On March 23, 1988, the meeting was held, at which DOT tendered a written offer to purchase the property for $801,800. After the Zengels summarily rejected this offer, DOT's representatives indicated that they would be filing an action to condemn the property within three to four months.
Nevertheless, F & J vigorously pursued its efforts to obtain site plan approval. Smith, in his role as project manager for the site plan, was responsible for communicating with the Board's engineer and making the revisions to the site plan required to obtain a "certificate of completeness." Although Smith had seen the State's plans delineating its proposed five acre acquisition, the site plan he presented to the Board delineated a strip along the property's Route 9 frontage as a "3-foot tentative DOT taking," while omitting any reference to the five acre parcel.
The Board's engineer issued a "certificate of completeness" of F & J's application on May 16, 1988 and a hearing on the application was held three days later on May 19, 1988. At the hearing, F & J's representatives never mentioned the State's planned acquisition. At the conclusion of the hearing, the Board approved F & J's plan by voice vote and on May 26, 1988 *24 it passed a resolution granting preliminary and final site plan approval.
On July 1, 1988, DOT filed a complaint condemning the five acre parcel, and on September 30, 1988 it filed a declaration of taking and deposited into court its $801,800 estimate of just compensation. An order for judgment and appointing commissioners was entered on December 20, 1988 and a commission hearing was conducted on June 20, 1989. Both parties appealed from the commissioner's award and demanded a jury trial.
Thereafter, on February 28, 1990, plaintiff moved in limine to exclude evidence of the preliminary and final site plan approval on the ground that it had been obtained in bad faith. At a plenary hearing on the motion, several DOT employees testified that the Zengels were aware no later than June 1987 that DOT planned to acquire the subject parcel and that they vigorously pursued efforts to persuade DOT to modify its design plans to eliminate the need for this acquisition. Although DOT notified the Zengels by a memorandum dated July 23, 1987 that it still intended to acquire the parcel, the Zengels continued their efforts to avoid DOT's planned acquisition through a meeting with the Commissioner of DOT in the local offices of a state senator. However, DOT subsequently reaffirmed its decision to proceed with the taking and it retained two independent appraisers to value the property. DOT received the appraisals in February 1988 and then scheduled the March 23, 1988 meeting with the Zengels.
John Zengel testified that DOT's representatives told him at a meeting in September 1987 that they had no funds to acquire any property and "they didn't know when at all they were ever going to condemn this piece of property." However, this testimony was disputed by DOT's representatives, who stated that the funding authorization for acquisition of the property required for the widening of Route 70 was given on August 20, 1986, and remained in effect throughout the period preceding the filing of the complaint and declaration of taking. Smith *25 testified that he called DOT in late 1987 or early 1988 and was told that it had no plans to acquire any part of the Zengels' property along Route 70; thus, he did not become aware of the plan to acquire the five acre parcel until around the time he completed the site plan. However, the DOT employee with whom Smith spoke testified that he not only informed Smith of the proposed acquisition of the five acre parcel for the widening of Route 70 sometime in October or November of 1987 but also sent him design plans showing the precise location of the planned acquisition.
The trial court found that DOT had in fact sent plans to Smith in November 1987 showing that it planned to acquire five acres of F & J's property for the widening of Route 70. Nevertheless, Smith prepared a site plan which included a proposed hotel and restaurant to be constructed in the middle of the land being acquired by the State. The trial court also found that the Zengels understood after their March 23, 1988 meeting with DOT officials that the property would be condemned. However, they failed to reveal the anticipated condemnation to the Board at the May 19, 1988 hearing on their site plan application. Furthermore, F & J's expert witness made misrepresentations to the Board regarding his discussions with DOT on the subject of highway access to the proposed development. Consequently, the court concluded that the site plan had been presented to the Board in bad faith, "solely for the purpose of increasing the value of the property in anticipation of the condemnation action," and that evidence of the site plan approval would be inadmissible at trial.
Accordingly, the trial court entered an order on April 3, 1990, providing among other things that "[t]he valuation of the subject property shall not consider the subject as enhanced by the May 26, 1988 Resolution granting Preliminary and Final Site Plan Approval" and that "[a]ny evidence regarding the impact of the proposed project shall be excluded from the consideration of the value of the property before the taking." We granted F & J's motion for leave to appeal from this order.
*26 There is substantial credible evidence to support the trial court's finding that F & J's submission of a site plan which contained a proposed hotel located on land the owner knew would be condemned, without disclosing the proposed condemnation to the Board, was made "solely for the purpose of increasing the value of the property in anticipation of the condemnation action." Furthermore, we agree with the trial court's conclusion that these circumstances require the exclusion from evidence of the site plan approval.
When private property is acquired for a public use, the condemning authority is required to pay the owner "just compensation." N.J. Const., art. I, § 20. The amount of a condemnation award must be "fair and just, not only to the property owner, but also to the condemning authority." Port of N.Y. Auth. v. Howell, 59 N.J. Super. 343, 347, 173 A.2d 310 (Law Div. 1960), aff'd, 68 N.J. Super. 559, 173 A.2d 310 (App.Div.), certif. denied, 36 N.J. 144, 174 A.2d 927 (1961). "The fair market value of the realty taken has been generally established in this State as the reasonable basis for such compensation." State v. Gallant, 42 N.J. 583, 587, 202 A.2d 401 (1964). Consequently, any evidence which is reasonably probative of fair market value is admissible in a condemnation action. State v. Gorga, 26 N.J. 113, 138 A.2d 833 (1958).
However, evidence which poses an undue danger of confusion or prejudice may be excluded. Thus, a court will not permit an expert to testify to the value of vacant land based on the projected income which could be earned from the operation of a building which might be erected thereon, because such a valuation is too speculative. State v. Mehlman, 118 N.J. Super. 587, 592, 289 A.2d 539 (App.Div. 1972); Port of N.Y. Auth. v. Howell, supra, 68 N.J. Super. at 568-69, 157 A.2d 731. Similarly, a court will not permit an expert to testify to the value of land based on a sale of either the subject property or a comparable property, if it appears that the sale was not bona fide. New Jersey Hwy. Auth. v. Rudd, 36 N.J. Super. 1, 5, 114 *27 A.2d 721 (App.Div. 1955); In re Port of N.Y. Auth., 28 N.J. Super. 575, 580-81, 101 A.2d 365 (App.Div. 1953). And a court will not admit evidence of an offer to sell the subject property, because such evidence would invite "speculation" and also provide "the opportunity for collusion and fraud." New Jersey Turnpike Auth. v. Bowley, 27 N.J. 549, 556, 143 A.2d 558 (1958), cert. denied, 358 U.S. 927, 79 S.Ct. 312, 3 L.Ed.2d 301 (1959).
We conclude that the trial court also should exclude evidence of value based on a governmental approval secured by a property owner for the sole purpose of enhancing the amount of a condemnation award. Like evidence of an offer to sell the subject property or evidence of an alleged comparable sale which was not a bona fide arms length transaction, evidence of a governmental approval of a development proposal submitted for the sole purpose of enhancing a condemnation award is not reasonably probative of the property's fair market value and poses an undue danger of confusion and prejudice.
Although this issue has not been directly addressed in any reported New Jersey decision, our former Supreme Court suggested in State ex. rel. Jones v. Carragan, 36 N.J.L. 52 (1872) that such evidence should be excluded. In Carragan, the court held that a property owner was entitled to compensation for improvements erected in the right of way of a proposed future street because the planned public acquisition was uncertain when the improvements were erected. However, the court went on to say:
If the improvements should be made in bad faith, with intent to throw an undue burthen on the public, another element would enter into the consideration of the question, which might perhaps produce a different result. [Id. at 54].
Furthermore, courts in other jurisdictions have held that an improvement erected for the sole purpose of enhancing an award in an imminent condemnation action should not be considered in determining fair market value. See, e.g., State ex. rel Herman v. Schaffer, 110 Ariz. 91, 98, 515 P.2d 593, 600 (1973); Waukegan Port Dist. v. Booras, 55 Ill. App.3d 790, 13 *28 Ill.Dec. 604, 608, 371 N.E.2d 321, 325 (App.Ct. 1977), cert. denied, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978); Board of Educ., Unified School Dist. 464 v. Porter, 234 Kan. 690, 676 P.2d 84, 89-90 (1984); Dixie Elect. Membership Corp. v. Sibley, 280 So.2d 311 (La. Ct. App. 1973); In re Briggs Ave. in City of New York, 196 N.Y. 255, 89 N.E. 814, 816 (1909); City of Richmond v. Old Dominion Iron & Steel Corp., 212 Va. 611, 616, 186 S.E.2d 30, 34 (1972). For example, in Schaffer the Court stated:
[T]he landowner may not recover the value of improvements placed on the land after knowledge of the impending condemnation when the improvements are placed on the land in bad faith. "Bad faith" improvements are those which are not made in the natural, ordinary, and legitimate use of real property, but are made for the sole purpose of enhancing the damages to be recovered in an eminent domain action. [515 P.2d at 600 (citations omitted)].
We perceive no significant distinction between the exclusion of evidence of an improvement which was erected solely for the purpose of enhancing an anticipated condemnation award, and the exclusion of evidence of a governmental approval of a planned improvement which has been obtained for that improper purpose. The danger of confusing the trier of fact and prejudicing the condemnor by placing before the jury an artificially enhanced valuation of the property is the same in both situations. Moreover, a property owner, being aware of the imminent condemnation, may proceed with an application for approval of an improvement which is otherwise economically unfeasible.
F & J relies upon a statement in Kingston East Realty Co. v. State of N.J., 133 N.J. Super. 234, 240, 336 A.2d 40 (App.Div. 1975) that a property owner may continue to utilize and develop its property even though it is aware of plans for public acquisition. However, there is a fundamental distinction between a property owner, who is aware of a government agency's long range plans to acquire his property, continuing in good faith to make productive use of the property until it is actually taken, including pursuing ordinary and legitimate development plans, and a property owner erecting improvements or obtaining governmental *29 approvals of development plans solely for the purpose of enhancing an anticipated condemnation award. This distinction is appropriately noted by the leading treatise on the law of eminent domain:
Merely because an owner of land is aware that a public improvement has been proposed which will result in the taking of his land, he is not to be deprived of the right to recover the value of buildings subsequently erected. It would be unjust to deprive an owner of the right to make the best use of his property except at his peril, merely because it lies in the path of one of the many public improvements which are so often discussed and projected without being actually consummated for many years (if at all). Thus, it has been held that where improvements were in an incomplete state at the initiation of a condemnation proceeding but completed prior to the time that title actually vested in the condemnor, the owner was entitled to the full value of such improvements ... When, however, a building is erected upon or moved to land which the owner knows is to be taken by eminent domain with the sole purpose of enhancing the damages, and not in the natural, ordinary and legitimate use of such property, the building remains personal property and should not be considered in determining the value of the real estate. [4 Nichols on Eminent Domain § 13.14 at 13-77 to 13-79 (rev. 3d ed. 1978) (emphasis added; footnotes omitted)].
F & J also argues that any misrepresentation it may have made to the Board could not have affected the Board's approval of its site plan application because the Board would have had no authority to consider DOT's intention to file a condemnation action. However, an applicant for site plan approval must show that it has made adequate provision for safe and convenient vehicular traffic access. N.J.S.A. 40:55D-41(b); see Dunkin' Donuts of N.J. v. Township of N. Brunswick Planning Bd., 193 N.J. Super. 513, 475 A.2d 71 (App.Div. 1984). In seeking to satisfy this requirement, F & J made misrepresentations to the Board regarding its discussions with DOT on the subject of access to the site. Therefore, it is unclear whether F & J would have obtained site plan approval if it had made full and accurate disclosure to the Board. Furthermore, if the Board had been informed that a condemnation action was imminent, it may have found sufficient reason to have temporarily deferred acting on the application. In any event, even if F & J had made full disclosure to the Board and obtained site plan approval, evidence of the approval would nevertheless have been inadmissible *30 because the record supports the trial court's finding that F & J's sole purpose in pursuing its application was to enhance the award in the anticipated condemnation action.
For similar reasons, we reject F & J's argument that DOT was precluded under principles of collateral estoppel from seeking to exclude evidence of the site plan approval. F & J's purpose in seeking site plan approval was not an issue before the Board and thus the Board's action could not foreclose the court's adjudication of that issue. See Alessandra v. Gross, 187 N.J. Super. 96, 103-07, 453 A.2d 904 (App.Div. 1982).
Affirmed.
NOTES
[1] Judge Gaulkin did not participate in oral argument. However, the parties consented to his participation in the decision subsequent to argument.
[2] Smith testified that he recused himself from all votes concerning F & J.